Roksana D. Moradi-Brovia (Bar No. 266572)
W. Sloan Youkstetter (Bar No. 296681)
**RESNIK HAYES MORADI LLP**
17609 Ventura Blvd., Suite 314
Encino, CA 91316
**Telephone:** (818) 285-0100
**Facsimile:** (818) 855-7013
roksana@RHMFirm.com
sloan@RHMFirm.com

*Attorneys for Debtor*
12th & K St. Mall Partners, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:22-bk-10061-BR |
| 12TH & K ST. MALL PARTNERS, LLC, | Chapter 11 |
| Debtor. | **MOTION FOR AUTHORITY TO USE CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT W. CLIPPINGER IN SUPPORT THEREOF** |
| | Date:   TBD<br>Time:   TBD<br>Place:  Courtroom 1668<br>         255 E. Temple Street<br>         Los Angeles, CA 90012 |

**TO THE HONORABLE BARRY RUSSELL, UNITED STATES BANKRUPTCY JUDGE; SECURED CREDITORS; OFFICE OF THE UNITED STATES TRUSTEE; AND ALL CREDITORS AND PARTIES IN INTEREST:**

12th & K St. Mall Partners, LLC, the "Debtor" and "Debtor-in-Possession" in the above-stated case, hereby moves the Court for an order approving the use of cash collateral of DCR Mortgage 10 Sub 3, LLC and the City of Sacramento (the "Secured Creditors"), as follows:

**RESNIK HAYES**
**MORADI LLP**

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ....................................................... 3

**I.    STATEMENT OF RELIEF SOUGHT** ........................................................... 3

**II.   STATEMENT OF FACTS** ............................................................................. 3

   *a.    Overview of the Debtor* ............................................................................ 3

   *b.    The Secured Creditors and the Obligations.* ............................................. 6

   *c.    Proposed Use of Cash Collateral.* ........................................................... 7

**III.  ADEQUATE PROTECTION** ....................................................................... 8

**IV.   ARGUMENT** ................................................................................................ 9

   *a.    The Court Should Authorize the Debtor's Use of the Cash Collateral.* .................. 9

   *b.    The Alleged Secured Creditors' Interests are Adequately Protected by the Continued Operations of the Business.* ........................................................... 10

   *c.    In Determining Adequate Protection, The Court Should Promote Reorganization.* 11

**DECLARATION OF ROBERT W. CLIPPINGER** ....................................................... 13

RESNIK HAYES
MORADI LLP

**2**

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF RELIEF SOUGHT

12th & K St. Mall Partners, LLC, the "Debtor" and "Debtor-in-Possession" ("DIP") in the above-stated case, respectfully requests an order of this Court authorizing it to use cash collateral for the months of February through July 2022, on the terms and conditions set forth herein, and as set forth in the projected profit and loss statement (the "Budget"), which is attached hereto as **Exhibit "A"** and incorporated herein.

In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay ordinary and necessary operating expenses. *Currently, the Debtor is not using cash collateral and those funds are being segregated, but this is no longer sustainable.* If the Debtor's ability to use cash collateral continues to be interrupted, the Debtor will be unable to maintain operations, including paying all expenses necessary for maintenance and repairs on its real property, including electrical, air conditioning/heating, plumbing, janitorial services, and security. This could cause the Debtor's tenants to vacate the property and breach their leases. If the Debtor's ability to use cash collateral continues to be interrupted, the Debtor will also be unable to pay property insurance and property taxes. *In sum, the Debtor's business, and the Debtor's prospects for a successful reorganization, will end.*

The senior lienholder, DCR Mortgage 10 Sub 3, LLC ("DCR Mortgage") filed its *Secured Creditor's Notice of Non-Consent to Use of Cash Collateral and Motion for Sequestration* on January 25, 2022 [Docket No. 29]. As stated previously, the Debtor is not using cash collateral; it is segregating those funds in its DIP cash collateral bank account.

### II.    STATEMENT OF FACTS

*a.    Overview of the Debtor*

The Debtor is a California limited liability company created on November 12, 2003, as a real estate investment company. Robert W. Clippinger is the managing member of the

**RESNIK HAYES
MORADI LLP**

Debtor (81.4775% owner).  The other members are: Ronald M. Tarbell (7.2938 owner);

Richard and Leslie Breiman (3.4550% owner); David and Deborah Gilbert (1.7275%

owner); Daniel and Julie Grey (1.7275% owner); Leslie Olson (1.092% owner); John and

Sheila Valenzuela (0.8637% owner); Reed C. Ferrick (0.8637% owner); Daniel A.

Bornstein (0.5182% owner); Maureen Argon (0.4319% owner); and Mitch Argon

(0.4319% owner).

The Debtor currently owns and operates a mixed-use property located at 1020 12th

Street Sacramento, CA 95814 (the "Property"); APN 006-0105-009-0000.  On July 29,

2019, the Debtor transferred 8.1% equity ownership in the Property to the Ziegelman

Family Trust.  Ziegelman Family Trust is not a member of the Debtor.  The Ziegelman

Family Trust used sale proceeds from another investment to purpose a fractional interest in

the Property.

The Property has 35 rental spaces.  The ground floor consists of commercial retail

space.  The largest commercial retail tenant (the "Restaurant Tenant") occupies a portion

of the ground floor and a portion of the second floor.  The remaining portion of the second

floor consists of office space.  The third and fourth floors consist of 23 loft style residential

units.  The Property is 97% occupied.

The Property is managed by Clippinger Investment Properties, Inc. for a 6%

management fee.   Robert W. Clippinger operates and is a shareholder of Clippinger

Investment Properties, Inc.

While the Debtor has been historically solvent, it has been significantly affected by

the Covid-19 pandemic.  Due to the California Governor's shutdown orders in March

2020, some of the tenants stopped paying rent, including its largest commercial retail

tenant (the "Restaurant Tenant").  The rental income dropped by $65,000 per month.  As a

result, the Debtor defaulted on payments in 2020.  The Restaurant Tenant has not paid rent

for nearly a year and a half.  It owes back rent of approximately $721,749 as of the petition

date.

**RESNIK HAYES
MORADI LLP**

1    After the Debtor defaulted, DCR Mortgage sent notice to the tenants for them to

2    pay rent to it directly.  Subsequently, the Debtor entered into a forbearance agreement with

3    DCR Mortgage and then came current with the payments.  The tenants resumed paying

4    rent to the Debtor directly. However, when the Restaurant Tenant resumed paying rent in

5    July 2021, it paid DCR Mortgage directly rather than the Debtor, despite multiple requests

6    to pay the Debtor.

7    The Restaurant Tenant's lease was slated to expired in September 2021.  The

8    Restaurant Tenant did provide timely notice to the Debtor in April 2021 that it was

9    exercising the second of two options to extend that was available under the lease. The

10    Debtor jumped through hoops to accommodate the Restaurant Tenant during the process of

11    negotiating the extension, offering tenant improvements, free rent and other perks; the

12    Restaurant Tenant agreed to sign off on the extension in September of 20201, but never

13    actually signed the extension, and the lease has expired.  It still occupies the space.

14    In compliance with the City of Sacramento's rent moratorium, the Restaurant

15    Tenant had until January 28, 2022 to pay all the back rent from March 2020 through

16    September 2021.  The Restaurant Tenant failed to tender the funds to cure the back rent by

17    the deadline. *The Restaurant Tenant did send the Debtor a partial payment of $649,079 on*

18    *February 2, 2022.*

19    The Debtor is currently attempting to negotiate a resolution with the Restaurant

20    Tenant again.  If the Debtor is unable to reach an agreement within a reasonable period, it

21    will seek to evict the Restaurant Tenant.

22    The Debtor's situation was exacerbated by the foreclosure moratorium because it

23    was not able to evict those tenants who were delinquent on rent.  Now, that the moratorium

24    has expired, the Debtor is in the process of evicting another commercial retail tenant and a

25    residential tenant.

26    The loan to DCR Mortgage was set to mature in March 2021, but the Debtor was

27    unable to obtain refinancing prior to the maturity date because of its financial situation in

28    2020.  DCR Mortgage has worked with the Debtor while it looked for refinancing;

**RESNIK HAYES
MORADI LLP**

postponing the foreclose sale to January 6, 2022.  The Debtor negotiated a forbearance agreement with DCR Mortgage that would postpone the sale, but DCR Mortgage withdrew from the agreement on January 5, 2022.

This case was filed in order to stop a foreclosure sale of the Debtor's Property and so that it can reorganize its financial affairs.

The Debtor believes that it has turned the corner because the Property is now 97% leased.  The Debtor will use this new solid financial footing to obtain postpetition financing to payoff DCR Mortgage.  The Debtor anticipates that it can seek financing while it resolves the issue with the Restaurant Tenant.

    *b.*    *The Secured Creditors and the Obligations.*

The Debtor has the following secured creditors:

**a) First Deed of Trust**

The first deed of trust is held by DCR Mortgage (the "First Deed of Trust").  The Debtor obtained a promissory note of $11,000,000 at 4%.  The First Deed of Trust was due and payable on April 1, 2021.  The First Deed of Trust was recorded on March 14, 2018.  Attached as **Exhibit "B"** and incorporated herein is the First Deed of Trust.

The principal balance is approximately $12,284,104.38 as of the petition date.

**b) Second Deed of Trust**

The second deed of trust is held by City of Sacramento (the "Second Deed of Trust").  The Debtor obtained a promissory note of $2,300,000 at 0%.  The Second Deed of Trust is due and payable in February 2035.  The Second Deed of Trust was recorded on February 24, 2005.  Attached as **Exhibit "C"** and incorporated herein is the Second Deed of Trust.

///

///

**RESNIK HAYES
MORADI LLP**

c.      *Proposed Use of Cash Collateral.*

The Debtor believes that the above creditors will take the position that the revenue generated, including *rents, issues, profits, royalties, bonuses, income, and other benefits derived from or produced by the Property* (the "Cash Collateral") constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code. *The Debtor is not aware of any other entity asserting an interest in the Cash Collateral.*

The Debtor proposes that it use the Cash Collateral to pay the allowed operating expenses pursuant to the Budget for the next five months from February 2022 to July 2022 (the "Interim Period"). The Debtor believes that those expenses represent the expenditures to maintain the business operations for the Interim Period.

Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the operation of the Property during the Interim Period, they may fluctuate due to circumstances out of the Debtor's control, such as unanticipated repairs or emergency expenses. Therefore, the Debtor requests court authority to deviate from the total operating expenses contained in the budget by no more than 15% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

The Debtor will continue to be bound by the terms and conditions set forth in the prepetition agreements except as specifically modified herein. This shall not constitute a modification of the liens granted to the secured creditors by the Debtor pursuant to the various agreements between the parties and various perfection documents.

In order to continue the operation of the business, the Debtor must be authorized to use Cash Collateral to pay the ordinary and necessary operating expenses. Currently, the Debtor is not using Cash Collateral, but this is no longer sustainable. If the Debtor's ability to use Cash Collateral is continued to be interrupted, the Debtor will be unable to maintain operations, including paying all expenses necessary for maintenance and repairs on the Property, including electrical, air conditioning/heating, plumbing, janitorial services, and security. This could cause the Debtor's tenants to vacate the Property and breach their

**RESNIK HAYES
MORADI LLP**

leases.  The Debtor will also be unable to pay the property insurance and property taxes. The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

### III.   **ADEQUATE PROTECTION**

The Debtor believes that that the lienholders are adequately protected by the continued and uninterrupted operation of the business.  The Debtor's use of Cash Collateral will enhance or preserve the value of the Property because the use of Cash Collateral is essential to continue the ordinary maintenance and operations of the business.

Without the use of the Cash Collateral, the Debtor will be unable to maintain operations, including paying all expenses necessary for maintenance and repairs on the Property, including electrical, air conditioning/heating, plumbing, janitorial services, and security.  As such, unless the Debtor is permitted to use the Cash Collateral, the value of the business will rapidly diminish.  This will protect the secured creditors against a decrease in value which directly affects the secured creditors' interest in the Property.

The Debtor believes that the secured creditors are adequately protected by the Debtor's assets.  The assets can be described as follows:

| Asset | Value |
|---|---|
| Cash on hand | $12,646.71 (per Schedules) |
| Accounts receivable (within 90 days - rent) | $141,185.20 (per Schedules) |
| Accounts receivable (over 90 days – Restaurant Tenant's back rent) | $721,749.02 (per Schedules) |
| Property | $15,925,000 (per Schedules) |
| Loan to 1300 U SPE, LLC | $140,000 (per Schedules) |
| *TOTAL* | $16,940,580.93 |

Notwithstanding that, the Debtor proposes to pay DCR Mortgage $45,000 per month, beginning February 16, 2022.

The Debtor will also give to the alleged secured creditors a replacement lien on the revenue generated postpetition from the Property to the extent that the creditors' Cash

**RESNIK HAYES
MORADI LLP**

**8**

1  Collateral is actually used.  <u>The Debtor will segregate in its cash collateral DIP bank</u>

2  <u>account all revenue exceeding the funds needed to pay the expenses set forth on the</u>

3  <u>Budget.</u>

4       If at any time the Debtor violates any provision of the order approving this Motion,

5  the lienholder may give written notice of such the default to Debtor's counsel.  If the

6  Debtor fails to cure the default with 21-days of said notice, the lienholders shall be entitled

7  to a hearing requesting relief from the automatic stay pursuant to 11 U.S.C. §362 on an

8  expedited basis.

9

10                            **IV.**   **ARGUMENT**

11        *a.*     *The Court Should Authorize the Debtor's Use of the Cash Collateral.*

12       As a general matter, a debtor-in-possession is permitted to use property of the estate

13  in the ordinary course of business without the need for notice or a hearing.  11 U.S.C.

14  Section 363(c)(1).  However, a debtor's use of cash collateral is an exception to this

15  general rule.  Section 363(c)(2) provides in pertinent part:

16            (2) The [debtor in possession] may not use, sell, or lease cash
              collateral ... unless
17

18            (A) each entity that has an interest in
              Such cash collateral consents; or

19            (B) the court, after notice and a hearing, authorizes such
              use, sale or lease in accordance with the provisions of
20            this section.

21  11 U.S.C. Section 363(c)(2).

22       Bankruptcy courts have consistently held that it is appropriate for a Chapter 11

23  debtor to use a secured creditor's cash collateral for a reasonable period of time for the

24  purpose of maintaining and operating its property.  *See MBank Dallas, N.A. v. O'Connor*

25  (*In re O'Connor*), 808 F.2d 1393, 1397 (10th Cir. 1987).  In addition, where, as here, the

26  debtor is operating a business, it is extremely important that use of cash collateral be

27  allowed in order to facilitate the goal of reorganization: "the purpose of Chapter 11 is to

28

**RESNIK HAYES**
**MORADI LLP**

rehabilitate debtors and generally access to cash collateral is necessary to operate a business." *In re Dynaco Corporation*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993).

As set forth above, the Debtor is seeking to use Cash Collateral to maintain and operate its Property.  The Debtor believes that those expenses represent the expenditures to maintain the business operations for the Interim Period.  Currently, the Debtor is not using cash collateral, but this is no longer sustainable.  If the Debtor's ability to use Cash Collateral is continued to be interrupted, the Debtor will be unable to maintain operations, including paying all expenses necessary for maintenance and repairs on the Property, including electrical, air conditioning/heating, plumbing, janitorial services, and security.  This could cause the Debtor's tenants to vacate the Property and breach their leases.  The Debtor will also be unable to pay the property insurance and property taxes.  The Debtor's business, and the Debtor's prospects for a successful reorganization, will end.

As such, the Debtor has determined that it would be in the overwhelming best interests of the estate and its creditors to use the Cash Collateral to continue to operate and maintain his business during the Interim Period.

**b.    *The Alleged Secured Creditors' Interests are Adequately Protected by the Continued Operations of the Business.***

Pursuant to Section 363(c)(2), the Court may authorize the debtor to use a secured creditor's cash collateral if the Court determines that the secured creditor is adequately protected.  *Pistole v. Mellor* (*In re Mellor*), 734 F.2d 1396, 1400 (9th Cir. 1984).  *See also O'Connor*, *supra*, 808 F.2d at 1398; *McCombs Properties VI, Ltd. v. First Texas Savings Association* (*In re McCombs Properties VI, Ltd.*), 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).

In ordinary circumstances, a secured creditor is to be protected against a decrease in value which directly affects the secured creditor's interest in its collateral.  *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 630, (1988); Section 506(a) of the Bankruptcy Code "limit(s] the secured

1  status of a creditor (i.e., the secured creditor's claim) to the lesser of the [allowed amount

2  of the] claim or the value of the collateral." *McCombs*, supra, 88 B.R. at 266.

3        As a general rule, a debtor may use cash collateral where such use would enhance

4  or preserve the value of the collateral.  The Debtor intends to use the Cash Collateral to

5  operate Property, as is set forth in **Exhibit "A."**

6        The use of Cash Collateral is essential to continue the ordinary maintenance and

7  operations of the business.  Without the use of the Cash Collateral, the Debtor will be

8  unable to maintain operations, including paying all expenses necessary for maintenance

9  and repairs on the Property, including electrical, air conditioning/heating, plumbing,

10  janitorial services, and security.  This could cause the Debtor's tenants to vacate the

11  Property and breach their leases.  As such, unless the Debtor is permitted to use the Cash

12  Collateral, the value of the Property will rapidly diminish.

13

14        c.       *In Determining Adequate Protection, The Court Should Promote*

15                 *Reorganization.*

16        In determining adequate protection, Courts have stressed the importance of

17  promoting a debtor's reorganization.  In *In re O'Connor*, supra, the Tenth Circuit stated:

18            In this case, Debtors, in the midst of a Chapter 11 proceeding,
              have proposed to deal with cash collateral for the purpose of
19            enhancing the prospects of reorganization. This quest is the
              ultimate goal of Chapter 11. Hence, the Debtor's efforts are not
20            only to be encouraged, but also their efforts during the
              administration of the proceeding are to be measured in light of
21            that quest. Because the ultimate benefit to be achieved by a
              successful reorganization inures to all the creditors of the
22            estate, a fair opportunity must be given to the Debtors to
              achieve that end. Thus, while interests of the secured creditor
23            whose property rights are of concern to the court, the interests
              of all other creditors also have bearing upon the question of
24            whether use of cash collateral shall be permitted during the
              early stages of administration.
25
   *In re O'Connor*, 808 F.2d at 1937.
26
         In order to promote Debtor's reorganization, the Court should grant the relief
27
   requested herein.  The Debtor has demonstrated herein that the use of the Cash Collateral
28

**RESNIK HAYES**
**MORADI LLP**

**11**

1  as proposed by the Debtor will preserve the business for the benefit of this estate and the

2  creditors, specifically including the alleged secured creditors.  The Debtor requires the

3  Cash Collateral to pay the necessary operating expenses for the Property.

4      As such, unless the Debtor is permitted to use the Cash Collateral, the value of the

5  Property will rapidly diminish because it will be unable to pay for repairs and the general

6  maintenance of the Property.  The Debtor cannot reorganize without the revenue from the

7  Property.  Indeed, a successful reorganization depends upon the use of Cash Collateral as

8  proposed herein.

9

10     **WHEREFORE**, Debtor respectfully requests that the Court enter its Order

11 authorizing him to use Cash Collateral on the terms and conditions described herein and

12 the exhibits thereto and granting such other and further relief as is just and proper under

13 the circumstances.

14

15 Dated: February 2, 2022                    **RESNIK HAYES MORADI LLP**

16

17                                  By:    /s/   **Roksana D. Moradi-Brovia**
                                        **Roksana D. Moradi-Brovia**
18                                       **W. Sloan Youkstetter**
                                        *Attorneys for Debtor*
19                                      12th & K St. Mall Partners, LLC

20

21

22

23

24

25

26

27

28

**RESNIK HAYES
MORADI LLP**

## <u>DECLARATION OF ROBERT W. CLIPPINGER</u>

I, ROBERT W. CLIPPINGER, declare as follows:

1.     I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would testify competently with respect thereto. Where facts are alleged upon information and belief, I believe them to be true.

2.     I am the managing member (81.4775% owner) and custodian of records of 12th & K St. Mall Partners, LLC, the "Debtor" and "Debtor-in-Possession" in the above-captioned case.  I am authorized to make decisions for the Debtor.

3.     The Debtor is a California limited liability company created on November 12, 2003, as a real estate investment company.  The other members are: Ronald M. Tarbell (7.2938 owner); Richard and Leslie Breiman (3.4550% owner); David and Deborah Gilbert (1.7275% owner); Daniel and Julie Grey (1.7275% owner); Leslie Olson (1.092% owner); John and Sheila Valenzuela (0.8637% owner); Reed C. Ferrick (0.8637% owner); Daniel A. Bornstein (0.5182% owner); Maureen Argon (0.4319% owner); and Mitch Argon (0.4319% owner).

4.     The Debtor currently owns and operates a mixed-use property located at 1020 12th Street Sacramento, CA 95814 (the "Property"); APN 006-0105-009-0000.  On July 29, 2019, the Debtor transferred 8.1% equity ownership in the Property to the Ziegelman Family Trust.  Ziegelman Family Trust is not a member of the Debtor.  The Ziegelman Family Trust used sale proceeds from another investment to purpose a fractional interest in the Property.

5.     The first deed of trust (the "First Deed of Trust") is held by DCR Mortgage 10 Sub 3, LLC ("DCR Mortgage").  The Debtor obtained a promissory note of $11,000,000 at 4%.  The First Deed of Trust was due and payable on April 1, 2021.  The First Deed of Trust was recorded on March 14, 2018.  Attached as **<u>Exhibit "B"</u>** and

**RESNIK HAYES
MORADI LLP**

1  incorporated herein is the First Deed of Trust. The principal balance is approximately

2  $12,284,104.38 as of the petition date.

3      6.    The second deed of trust is held by City of Sacramento (the "Second Deed of

4  Trust").  The Debtor obtained a promissory note of $2,300,000 at 0%.  The Second Deed

5  of Trust is due and payable in February 2035.  The Second Deed of Trust was recorded on

6  February 24, 2005.  Attached as **Exhibit "C"** and incorporated herein is the Second Deed

7  of Trust.

8      7.    I believe that the above creditors will take the position that the revenue

9  generated, including *rents, issues, profits, royalties, bonuses, income, and other benefits*

10 *derived from or produced by the Property* (the "Cash Collateral") constitute cash collateral

11 within the meaning of §363(a) of the Bankruptcy Code. *I am not aware of any other entity*

12 *asserting an interest in the Cash Collateral.*

13     8.    The Property has 35 rental spaces.  The ground floor consists of commercial

14 retail space.  The largest commercial retail tenant (the "Restaurant Tenant") occupies a

15 portion of the ground floor and a portion of the second floor.  The remaining portion of the

16 second floor consists of office space.  The third and fourth floors consist of 23 loft style

17 residential units.  The Property is 97% occupied.

18     9.    The Property is managed by Clippinger Investment Properties, Inc. for a 6%

19 management fee.   I am shareholder of and operate Clippinger Investment Properties, Inc.

20     10.    While the Debtor has been historically solvent, it has been significantly

21 affected by the Covid-19 pandemic.  Due to the California Governor's shutdown orders in

22 March 2020, some of the tenants stopped paying rent, including its largest commercial

23 retail tenant (the "Restaurant Tenant").  The rental income dropped by $65,000 per month.

24 As a result, the Debtor defaulted on payments in 2020.  The Restaurant Tenant has not paid

25 rent for nearly a year and a half.  It owes back rent of approximately $721,749 as of the

26 petition date.

27     11.    After the Debtor defaulted, DCR Mortgage sent notice to the tenants for

28 them to pay rent to it directly.  Subsequently, the Debtor entered into a forbearance

**RESNIK HAYES
MORADI LLP**

**14**

agreement with DCR Mortgage and then came current with the payments.  The tenants resumed paying rent to the Debtor directly. However, when the Restaurant Tenant resumed paying rent in July 2021, it paid DCR Mortgage directly rather than the Debtor, despite multiple requests to pay the Debtor.

12.    The Restaurant Tenant's lease was slated to expired in September 2021.  The Restaurant Tenant did provide timely notice to the Debtor in April 2021 that it was exercising the second of two options to extend that was available under the lease. The Debtor jumped through hoops to accommodate the Restaurant Tenant during the process of negotiating the extension, offering tenant improvements, free rent and other perks; the Restaurant Tenant agreed to sign off on the extension in September of 20201, but never actually signed the extension, and the lease has expired.  It still occupies the space.

13.    In compliance with the City of Sacramento's rent moratorium, the Restaurant Tenant had until January 28, 2022 to pay all the back rent from March 2020 through September 2021.  The Restaurant Tenant failed to tender the funds to cure the back rent by the deadline. *The Restaurant Tenant did send the Debtor a partial payment of $649,079 on February 2, 2022.*

14.    The Debtor is currently attempting to negotiate a resolution with the Restaurant Tenant again.  If the Debtor is unable to reach an agreement within a reasonable period, it will seek to evict the Restaurant Tenant.

15.    The Debtor's situation was exacerbated by the foreclosure moratorium because it was not able to evict those tenants who were delinquent on rent.  Now, that the moratorium has expired, the Debtor is in the process of evicting another commercial retail tenant and a residential tenant.

16.    The loan to DCR Mortgage was set to mature in March 2021, but the Debtor was unable to obtain refinancing prior to the maturity date because of its financial situation in 2020.  DCR Mortgage has worked with the Debtor while it looked for refinancing; postponing the foreclose sale to January 6, 2022.  The Debtor negotiated a forbearance

RESNIK HAYES
MORADI LLP

**15**

agreement with DCR Mortgage that would postpone the sale, but DCR Mortgage withdrew from the agreement on January 5, 2022.

17.     This case was filed in order to stop a foreclosure sale of the Debtor's Property and so that it can reorganize its financial affairs.

18.     I believe that the Debtor has turned the corner because the Property is now 97% leased.  The Debtor will use this new solid financial footing to obtain postpetition financing to payoff DCR Mortgage.  I anticipate that the Debtor can seek financing while it resolves the issue with the Restaurant Tenant.

19.     DCR Mortgage filed its *Secured Creditor's Notice of Non-Consent to Use of Cash Collateral and Motion for Sequestration* on January 25, 2022 [Docket No. 29].  The Debtor is not using Cash Collateral; and it is segregating those funds in its Cash Collateral DIP bank account.

20.     The Debtor seeks authorization to use Cash Collateral for the next five months from February 2022 to July 2022 (the "Interim Period"), on the terms and conditions set forth herein, and as set forth in the projected profit and loss statement (the "Budget").  Attached as **Exhibit "A"** is a true and correct copy of the Budget.

21.     The Debtor proposes that it use the Cash Collateral to pay the allowed operating expenses pursuant to the Budget.

22.     I believe that those expenses represent the expenditures to maintain the business operations for the Interim Period.

23.     In order to continue the operation of the business, the Debtor must be authorized to use cash collateral to pay ordinary and necessary operating expenses. *Currently, the Debtor is not using cash collateral and those funds are being segregated, but this is no longer sustainable.*  If the Debtor's ability to use cash collateral continues to be interrupted, the Debtor will be unable to maintain operations, including paying all expenses necessary for maintenance and repairs on its real property, including electrical, air conditioning/heating, plumbing, janitorial services, and security.  This could cause the Debtor's tenants to vacate the property and breach their leases.  If the Debtor's ability to

**RESNIK HAYES
MORADI LLP**

use cash collateral continues to be interrupted, the Debtor will also be unable to pay property insurance and property taxes.  *In sum, the Debtor's business, and the Debtor's prospects for a successful reorganization, will end.*

24.    Although the Budget represents the Debtor's best estimate of the necessary expenses associated with the operation of the Property during the Interim Period, they may fluctuate due to circumstances out of the Debtor's control, such as unanticipated repairs or emergency expenses.  Therefore, the Debtor requests court authority to deviate from the total operating expenses contained in the budget by no more than 15% and to deviate by category (provided the Debtor does not pay any expenses outside any of the approved categories) without the need for further Court order.

25.    The Debtor will continue to be bound by the terms and conditions set forth in the prepetition agreements except as specifically modified herein.  This shall not constitute a modification of the liens granted to the secured creditors by the Debtor pursuant to the various agreements between the parties and various perfection documents.

26.    I believe that the secured creditors are adequately protected by the Debtor's assets.  The assets can be described as follows:

| Asset | Value |
|---|---|
| Cash on hand | $12,646.71 (per Schedules) |
| Accounts receivable (within 90 days - rent) | $141,185.20 (per Schedules) |
| Accounts receivable (over 90 days – Restaurant Tenant's back rent) | $721,749.02 (per Schedules) |
| Property | $15,925,000 (per Schedules) |
| Loan to 1300 U SPE, LLC | $140,000 (per Schedules) |
| *TOTAL* | $16,940,580.93 |

27.    Notwithstanding that, the Debtor proposes to pay DCR Mortgage $45,000 per month, beginning February 16, 2022.

///

///

**RESNIK HAYES
MORADI LLP**

28.     The Debtor will also give to the alleged secured creditors a replacement lien on the revenue generated postpetition from the Property to the extent that the creditors' Cash Collateral is actually used.  <u>The Debtor will segregate in its cash collateral DIP bank account all revenue exceeding the funds needed to pay the expenses set forth on the Budget.</u>

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this February ___, 2022, at _____, California.

By:    SEE NEXT PAGE    
_____
Robert W. Clippinger
*Declarant*

28.    The Debtor will also give to the alleged secured creditors a replacement lien on the revenue generated postpetition from the Property to the extent that the creditors' Cash Collateral is actually used.  The Debtor will segregate in its cash collateral DIP bank account all revenue exceeding the funds needed to pay the expenses set forth on the Budget.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this February **2**, 2022, at **Los Angeles**, California.

By: _____

Robert W. Clippinger
*Declarant*

# EXHIBIT "A"

Budget Detail
The Cathedral Building - 1020 12th St Sacramento, CA 95814
Period Range: Feb 2022 to Jul 2022

| Account Name | Feb 2022 | Mar 2022 | Apr 2022 | May 2022 | Jun 2022 | Jul 2022 | Total |
|---|---|---|---|---|---|---|---|
| **Income** | | | | | | | |
| Revenues | | | | | | | |
| Rental Income | | | | | | | |
| Base Rent | 105,378.00 | 105,378.00 | 105,378.00 | 105,378.00 | 105,378.00 | 105,378.00 | 632,268.00 |
| Ella's Back Payment (partial payment received) | 649,078.78 | - | - | - | - | - | - |
| Air BnB Rental Income | 6,902.65 | 9,359.60 | 9,489.24 | 7,386.89 | 8,147.55 | 5,750.56 | 47,036.49 |
| **Total Rental Income** | **761,359.43** | **114,737.60** | **114,867.24** | **112,764.89** | **113,525.55** | **111,128.56** | **1,328,383.27** |
| Tenant Reimbursements | | | | | | | |
| CAM Charges | 13,990.17 | 13,990.17 | 13,990.17 | 13,990.17 | 13,990.16 | 13,990.16 | 83,941.00 |
| **Total Tenant Reimbursements** | **13,990.17** | **13,990.17** | **13,990.17** | **13,990.17** | **13,990.16** | **13,990.16** | **83,941.00** |
| Other Rental Related Income | | | | | | | |
| Parking | 1,975.00 | 1,975.00 | 1,975.00 | 1,975.00 | 1,975.00 | 1,975.00 | 11,850.00 |
| Storage | 760.00 | 760.00 | 760.00 | 760.00 | 760.00 | 760.00 | 4,560.00 |
| Application Fee Income | 55.00 | 55.00 | 55.00 | 55.00 | 55.00 | 55.00 | 330.00 |
| **Total Other Rental Related Income** | **2,790.00** | **2,790.00** | **2,790.00** | **2,790.00** | **2,790.00** | **2,790.00** | **16,740.00** |
| **Total Revenues** | **778,139.60** | **131,517.77** | **131,647.41** | **129,545.06** | **130,305.71** | **127,908.72** | **1,494,985.49** |
| **Total Budgeted Income** | **844,060.82** | **131,517.77** | **131,647.41** | **129,545.06** | **130,305.71** | **127,908.72** | **1,429,064.27** |
| | | | | | | | |
| **Expense** | | | | | | | |
| Operating Expenses | | | | | | | |
| Utilities | | | | | | | |
| Electricity | 2,460.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 2,300.00 | 13,960.00 |
| SMUD - Utility Deposit | 100.00 | - | - | - | - | - | - |
| Trash | 992.28 | 992.28 | 992.28 | 992.28 | 992.28 | 992.28 | 5,953.68 |
| Waste Management - Utility Deposit | 100.00 | - | - | - | - | - | - |
| Water / Sanitation | 3,650.00 | 3,650.00 | 3,750.00 | 3,650.00 | 3,750.00 | 3,650.00 | 22,100.00 |
| Sacramento Department of Utilities - Utility Deposit | 100.00 | - | - | - | - | - | - |
| **Total Utilities** | **7,402.28** | **6,942.28** | **7,042.28** | **6,942.28** | **7,042.28** | **6,942.28** | **42,313.68** |
| Repairs and Maintenance | | | | | | | |
| Reimbursement to CIP for General Maintenance and Misc. Costs (see not | 6,407.47 | 6,407.47 | 6,407.47 | 6,407.47 | 6,407.47 | 6,407.47 | 38,444.82 |
| Electrical Repair | 5.84 | 5.84 | 5.84 | 5.83 | 5.83 | 5.83 | 35.01 |
| HVAC Repair and Maintenance | 178.00 | 178.00 | 178.00 | 178.00 | 178.00 | 178.00 | 1,068.00 |
| Interior/Exterior Maintenance | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 10.00 | 60.00 |
| Interior/Exterior Repairs | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 75.00 | 450.00 |
| Locksmith & Security | 66.00 | 66.00 | 66.00 | 66.00 | 66.00 | 66.00 | 396.00 |
| Plumbing Repairs & Supplies | 101.00 | 101.00 | 101.00 | 101.00 | 101.00 | 101.00 | 606.00 |
| Supplies | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 80.00 | 480.00 |
| Janitorial Supplies | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 400.00 | 2,400.00 |
| Fire Protection | 347.00 | 347.00 | 347.00 | 347.00 | 347.00 | 347.00 | 2,082.00 |
| Elevator Repairs & Maintenance | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 375.00 | 2,250.00 |

Budget Detail
The Cathedral Building - 1020 12th St Sacramento, CA 95814
Period Range: Feb 2022 to Jul 2022

| | | | | | | | |
|---|--:|--:|--:|--:|--:|--:|--:|
| Air BnB Expense | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 20.00 | 120.00 |
| **Total Repairs and Maintenance** | **8,065.31** | **8,065.31** | **8,065.31** | **8,065.30** | **8,065.30** | **8,065.30** | **48,391.83** |
| **Total Operating, Maintenance and Management** | **15,467.59** | **15,007.59** | **15,107.59** | **15,007.58** | **15,107.58** | **15,007.58** | **90,705.51** |
| Real Estate Taxes, Property Related Taxes and Insurance | | | | | | | |
| Property Taxes | 13,099.66 | 13,099.66 | 13,099.66 | 13,099.66 | 13,099.66 | 13,099.66 | 78,597.96 |
| Property Insurance | 1,573.61 | 1,573.61 | 1,573.61 | 1,573.61 | 1,573.61 | 1,573.61 | 9,441.66 |
| **Total Real Estate Taxes, Property Related Taxes and Insurance** | **14,673.27** | **14,673.27** | **14,673.27** | **14,673.27** | **14,673.27** | **14,673.27** | **88,039.62** |
| Management Fees | | | | | | | |
| Property Management Fee | 45,848.97 | 7,051.66 | 7,059.43 | 6,933.29 | 6,978.93 | 6,835.11 | 80,707.38 |
| **Total Management Fees** | **45,848.97** | **7,051.66** | **7,059.43** | **6,933.29** | **6,978.93** | **6,835.11** | **80,707.38** |
| General and Administrative Expenses | | | | | | | |
| Professional Fees | | | | | | | |
| Bookkeeping / CPA | 1,070.84 | 1,070.84 | 1,070.84 | 1,070.83 | 6,070.83 | 1,070.83 | 11,425.01 |
| Unlawful Detainer Legal Fees | 0.00 | 0.00 | 2,000.00 | 0.00 | 2,000.00 | 0.00 | 4,000.00 |
| Bankrupcy Legal Fees | 0.00 | 20,000.00 | 0.00 | 0.00 | 0.00 | 0.00 | 20,000.00 |
| **Total Professional Fees** | **1,070.84** | **21,070.84** | **1,070.84** | **1,070.83** | **6,070.83** | **1,070.83** | **35,425.01** |
| Administrative Expenses | | | | | | | |
| Bank Service Charges | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 42.00 | 252.00 |
| Late Fees | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 750.00 |
| **Total Administrative Expenses** | **167.00** | **167.00** | **167.00** | **167.00** | **167.00** | **167.00** | **1,002.00** |
| **Total General and Administrative Expenses** | **1,237.84** | **21,237.84** | **1,237.84** | **1,237.83** | **6,237.83** | **1,262.83** | **32,452.01** |
| Office Expenses | | | | | | | |
| Office Expenses | 1,168.82 | 1,168.82 | 1,168.82 | 1,168.82 | 1,168.82 | 1,168.82 | 7,012.92 |
| **Total Office Expenses** | **1,143.82** | **1,143.82** | **1,143.82** | **1,143.82** | **1,143.82** | **1,143.82** | **6,862.92** |
| **Total Operating Expenses** | **78,371.49** | **59,114.18** | **39,221.95** | **38,995.79** | **44,141.43** | **38,897.61** | **298,742.44** |
| **Total Budgeted Expense** | **78,371.49** | **59,114.18** | **39,221.95** | **38,995.79** | **44,141.43** | **38,897.61** | **298,742.44** |
| | | | | | | | |
| Total Budgeted Income | 844,060.82 | 131,517.77 | 131,647.41 | 129,545.06 | 130,305.71 | 127,908.72 | 1,494,985.49 |
| Total Budgeted Expense | 78,371.49 | 59,114.18 | 39,221.95 | 38,995.79 | 44,141.43 | 38,897.61 | 298,742.44 |
| **Net Operating Income** | **765,689.33** | **72,403.59** | **92,425.46** | **90,549.27** | **86,164.28** | **89,011.11** | **1,196,243.05** |
| | | | | | | | |
| **Other Expense** | | | | | | | |
| US Trustee Fee's | | | | | | | |
| US Trustee Fee's | 0.00 | 0.00 | 1,805.87 | 0.00 | 0.00 | 1,666.78 | 3,472.66 |
| **Total US Trustee Fee's** | **0.00** | **0.00** | **1,461.90** | **0.00** | **0.00** | **1,111.69** | **2,573.58** |
| Other Income (Expenses) | | | | | | | |
| Adequate protection to DCSR | | | | | | | |
| Adequate protection to DCSR | 45,000.00 | 45,000.00 | 45,000.00 | 45,000.00 | 45,000.00 | 45,000.00 | 270,000.00 |
| **Total Adequate protection to DCSR** | **45,000.00** | **45,000.00** | **45,000.00** | **45,000.00** | **45,000.00** | **45,000.00** | **270,000.00** |
| Interest Expense | | | | | | | |
| Interest Expense | 52,500.00 | 52,500.00 | 52,500.00 | 52,500.00 | 52,500.00 | 52,500.00 | 315,000.00 |
| **Total Interest Expense** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **315,000.00** |
| **Total Other Income (Expenses)** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **52,500.00** | **315,000.00** |

Budget Detail
The Cathedral Building - 1020 12th St Sacramento, CA 95814
Period Range: Feb 2022 to Jul 2022

| Income Taxes | | | | | | | |
|---|---|---|---|---|---|---|---|
| State Income Taxes | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 125.00 | 750.00 |
| **Total Income Taxes** | **125.00** | **125.00** | **125.00** | **125.00** | **125.00** | **125.00** | **750.00** |
| **Total Budgeted Other Expense** | **97,625.00** | **97,625.00** | **99,086.90** | **97,625.00** | **97,625.00** | **98,736.69** | **588,323.58** |

**Please Note:**

**Ella's Back Payment (partial payment received)**
The Debtor received a partial payment of $649,078.78 on February 1, 2022.  The total amount owing is $768,077.53.  The Debtor intends to collect the remaining amount.

**Reimbursement to CIP for General Maintenance and Misc. Costs**
There are staff at the property that is owned by 12th & K Street Mall Partners, LLC.  They manage the property, collect rents, lease apartments, maintain the property and maintain tenant relations. These people are employed by Clippinger Investment Properties and per contract with the entity (12th & K Street Mall Partners, LLC) the cost of those employees, who specifically work at the property for the benefit of the property owned by 12th & K Street Mall Partners, are repaid every pay period by the client, 12th & K Street Mall Partners, LLC to Clippinger Investment Properties, Inc.   Again, these employees are at the property for the sole benefit of the property owners, 12th & K Street Mall Partners, LLC and not performing work for Clippinger Investment Properties, Inc.  The staff at the property is essential to the continued operation of the property and sustenance  and maintenance of the asset. This line item includes reimb. for any misc. direct costs that the

# EXHIBIT "B"

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME  Sacramento Bank
MAILING
ADDRESS  1504 Eureka Rd
          #100
CITY, STATE
ZIP CODE

Roseville, CA 95561

Sacramento County
**Donna Allred, Clerk/Recorder**

| Doc # **201803141470** | | Fees | $374.00 |
|---|---|---|---|
| 3/14/2018 | 3:54:09 PM | Taxes | $0.00 |
| MCY | Electronic | PCOR | $0.00 |
| Titles | 4 | Paid | $374.00 |
| Pages | 24 | | |

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Deed of Trust, Security Agreement, Assignment
of Rents and
Fixture Filing

DOCUMENTARY TRANSFER TAX $ _____

EXEMPTION (R&T CODE) _____

EXPLANATION _____

_____

Signature of Declarant or Agent determining tax

Exempt from the fee imposed by the Building Homes & Jobs Act (SB2-2017) (GC 27388.1):

☐   Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax

☐   Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier

☒   Exempt from fee per GC 27388.1 (a) (1); fee cap of $225 reached
      Partial
☐   Exempt from the fee per GC 27388.1 (a) (1) document not related to real property

Failure to include an exemption reason will result in the imposition of the $75 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

NAME  Sacramento Bank

MAILING
ADDRESS  1504 Eureka Rd
                                        #100

CITY, STATE
ZIP CODE

Roseville, CA 95561

---

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

# TITLE(S)

Deed of Trust, Security Agreement, Assignment
of Rents and
Fixture Filing

DOCUMENTARY TRANSFER TAX $ _____

EXEMPTION (R&T CODE) _____

EXPLANATION _____

_____
Signature of Declarant or Agent determining tax

---

Exempt from the fee imposed by the Building Homes & Jobs Act (SB2-2017) (GC 27388.1):

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier

☒ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225 reached
   Partial

☐ Exempt from the fee per GC 27388.1 (a) (1) document not related to real property

Failure to include an exemption reason will result in the imposition of the $75 Building Homes and Jobs Act fee. Fees collected are deposited to the State and may not be available for refund.

FATCC

Recorded at Request of and
When Recorded Mail to:

Sacramento Bank of Commerce
1504 Eureka Road, Suite 100
Roseville, CA 95661

5623139

## DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTURE FILING

THIS DEED OF TRUST is made as of February __, 2018, by and among 12th & K St. Mall Partners, LLC, a California limited liability company, whose address is 30012 Ivy Glenn Drive, Suite 200, Laguna Niguel, CA 92677 ("**Trustor**"), to First American Title Company located at 4 First American Way, Santa Ana, CA 92707 ("**Trustee**"), for the benefit of Sacramento Bank of Commerce whose address is 1504 Eureka Road, Suite 100, Roseville, CA   95661, and its successors and assigns ("**Beneficiary**"), pursuant to the terms of that certain Commercial Real Estate Loan Agreement dated of even date herewith, by and among Trustor and Beneficiary (as from time to time amended, modified or supplemented, the "**Loan Agreement**") in connection with the loan evidenced by the Promissory Note Secured by Deed of Trust of even date herewith by Trustor in favor of Beneficiary in the principal amount of up to Eleven Million Dollars ($11,000,000) (the "**Note**").

## WITNESSETH:

For valuable consideration, receipt of which is acknowledged, TRUSTOR HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, IN TRUST, WITH POWER OF SALE, FOR THE BENEFIT AND SECURITY OF BENEFICIARY, all of the real property in the City of Sacramento, County of Sacramento, State of California, described in **Exhibit A** attached hereto and made a part hereof (the "**Real Property**");

TOGETHER WITH all rents, issues, profits, royalties, bonuses, income and other benefits derived from or produced by the Real Property (subject, however, to the assignment of rents and profits to Beneficiary herein);

TOGETHER WITH all right, title, estate and interest of Trustor in, to and under all leases or subleases of the Real Property or any part thereof now or hereafter in effect, including all security or other deposits, advance or prepaid rents, and deposits or payments of similar nature;

TOGETHER WITH all right, title, estate and interest of Trustor in and to all options to purchase or lease the Real Property or any part thereof or interest therein, and any greater estate in the Real Property now owned or hereafter acquired by Trustor;

TOGETHER WITH all right, title, estate and interest of every kind and nature, at law or in equity, which Trustor now has or may hereafter acquire in the Real Property;

TOGETHER WITH all easements, rights of way and rights appurtenant thereto, and all tenements, hereditaments and appurtenances thereof and thereto, and all water rights and shares of stock evidencing the same;

TOGETHER WITH all right, title, estate and interest of Trustor, now owned or hereafter acquired, in and to any land lying within the right of way of any street, open or proposed, adjoining the Real Property, and any and all sidewalks, alleys, and strips and gores of land adjacent to or used in connection with the Real Property;

TOGETHER WITH all buildings, structures and improvements now or hereafter located on the Real Property, including all fixtures, attachments, appliances, equipment, machinery, and other articles now or hereafter affixed or attached to such buildings, structures or improvements (all of which shall, to the full extent under applicable law, constitute real property) (the "**Improvements**"); and

TOGETHER WITH all other claims and demands which Trustor now has or may hereafter acquire in the Real Property or the Improvements, including all claims or demands to all proceeds of all insurance now or hereafter in effect with respect to the Real Property or the Improvements, all awards made for the taking by condemnation or the power of eminent domain, or by any proceeding or purchase in lieu thereof, of the Real Property or the Personal Property, or any part thereof, or any damage or injury thereto, all awards resulting from a change of grade of streets, and all awards for severance damages.

The entire Real Property and Improvements and all right, title, estate and interest described above and hereby conveyed to Trustee may hereafter be referred to collectively as the "**Property**."

**FOR THE PURPOSE OF SECURING**:

A.       Payment of indebtedness, in the principal sum of up to Eleven Million Dollars ($11,000,000), with interest thereon, evidenced by the Note, and performance of each covenant and agreement of Trustor in the Note, and all modifications, amendments, replacements, extensions and renewals thereof and substitutions therefor.

B.       Payment and performance of all obligations of Trustor under this Deed of Trust and performance of each covenant and agreement of Trustor in this Deed of Trust, and all modifications, amendments, replacements, extensions and renewals thereof and substitutions therefor.

C.       Payment of all sums advanced by Beneficiary to protect the security of this Deed of Trust or the Property, with interest thereon at the Interest Rate set forth in the Note ("**Interest Rate**").

D.       Payment and performance of all obligations of Trustor under the Loan Agreement and performance of each covenant and agreement of Trustor under the Loan Agreement, and all modifications, amendments, replacements, extensions and renewals thereof and substitutions therefor.

E.    Payment of all other sums, with interest thereon, which may hereafter be loaned to Trustor, or its successors or assigns, by Beneficiary, when evidenced by a promissory note or promissory notes reciting that they are secured by this Deed of Trust.

This Deed of Trust, the Note, the Loan Agreement and any other instrument (excluding any guaranty or indemnity not secured by this Deed of Trust) given to evidence or further secure the payment and performance of any indebtedness or obligation secured hereby may hereafter be referred to collectively as the "**Loan Documents**."

TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR HEREBY COVENANTS AND AGREES AS FOLLOWS:

1.    Covenants and Agreements of Trustor

1.1.    Care of Property.  Trustor shall keep and maintain the Property and all abutting grounds, sidewalks, roads, parking areas and landscape areas in good condition and repair; not remove, demolish or substantially alter (except such alterations as may be required by applicable law) any of the Improvements after completion of the same pursuant to the Loan Agreement; complete promptly and in a good and workmanlike manner any building or other improvement which may be constructed on the Real Property, and promptly restore and repair, in like manner, to the equivalent of its original condition any building or other improvement which may be damaged or destroyed thereon; comply with all laws, ordinances, regulations and requirements of any governmental authority and all covenants, conditions and restrictions now or hereafter applicable to the Property or any part thereof; not commit or permit any waste or deterioration of the Property; and not commit, suffer or permit any act to be done in or upon the Property in violation of any law, ordinance, regulation or requirement of governmental authority or any covenants, conditions or restrictions now or hereafter applicable to the Property or any part thereof. Unless required by applicable law, no Trustor shall allow changes in the use of the Property, or any part thereof, from the use being made as of the date of this Deed of Trust. No Trustor shall initiate or acquiesce in any change in the zoning classification of the Real Property without Beneficiary's prior written consent. Trustor shall do all things and perform all acts, in a timely and proper manner, which from the character or use of the Property are reasonably necessary or prudent to protect and preserve the value and condition of the Property.

1.2.    Required Insurance.  Trustor shall at all times provide, maintain and keep in force the following policies of insurance:

(a)    Property insurance against loss or damage to the Improvements by fire and all other risks of physical loss or damage with special form coverage in an amount reasonably approved by Beneficiary, and with sublimits reasonably approved by Beneficiary, including sprinkler leakage, demolition cost, cost of debris removal, increased cost of construction and demolition, and increased cost of construction arising from operation or enforcement of building laws or ordinances, and such additional endorsements as Beneficiary may reasonably require, and containing a "replacement cost endorsement" or other endorsement to eliminate application of the coinsurance clause;

(b)    If requested by Beneficiary, business interruption insurance and loss of "rental value" insurance in such amounts as are reasonably required by Beneficiary;

(c)    General commercial liability insurance on an "occurrence basis" against claims for "personal injury" with respect to personal injury, death or property damage occurring in, on or about the Property and the adjoining streets, sidewalks and passageways, such insurance to name Beneficiary as an additional insured and to afford immediate minimum protection to a limit of not less than such amounts as are set forth in the Loan Agreement;

(d)    If required by law during the course of any construction or repair of the Improvements, workers' compensation insurance (including employer's liability insurance, if requested by Beneficiary) for all employees of Trustor engaged on or with respect to the Property in such amount as is reasonably required by Beneficiary or, if such limits are established by law, in such amounts;

(e)    During the course of any construction or repair of the Improvements, builder's risk completed value insurance against "all risks of physical loss," including collapse and transit coverage, with deductibles not to exceed ten thousand dollars ($10,000), in nonreporting form, covering the total value of work performed and equipment, supplies and materials furnished, and containing the "permission to occupy upon completion of work or occupancy" endorsement;

(f)    Such other insurance, and in such amounts, as may from time to time be reasonably required by Beneficiary against the same or other hazards, provided that Trustor shall only be obligated to obtain such insurance to the extent it is commercially available and to the extent such insurance is maintained by similar businesses; and

(g)    An endorsement or agreement by the insurer under all policies of insurance required by this Deed of Trust that any loss shall be payable in accordance with the terms of such policy notwithstanding any act, omission or negligence of Trustor which might otherwise result in forfeiture of such insurance, and the further agreement of the insurer waiving all rights of setoff, counterclaims or deductions against Trustor.

1.3.    Delivery of Policies, Payment of Premiums.

(a)    All policies of insurance shall be issued by companies and in amounts in each company reasonably satisfactory to Beneficiary. All policies of insurance shall show Beneficiary as mortgagee and shall have attached thereto a lender's loss payable endorsement for the benefit of Beneficiary in form satisfactory to Beneficiary. Trustor shall furnish Beneficiary with a copy of all policies of required insurance. If Beneficiary consents to Trustor providing any of the required insurance through blanket policies carried by Trustor and covering more than one (1) location, then Trustor shall furnish Beneficiary with a certified copy of each such policy and a certificate of insurance for each such policy setting forth the coverage as to the Property, the limits of liability as to the Property, the name of the carrier, the policy number, and the expiration date.

(b)    At least thirty (30) days prior to the expiration of each insurance policy, Trustor shall furnish Beneficiary with evidence satisfactory to Beneficiary of the payment of the

premium and arrangements for the reissuance of a policy continuing insurance in force as required by this Deed of Trust. If reasonably possible, each policy shall contain a provision that such policy will not be canceled or materially amended, which term shall include any reduction in the scope or limits of coverage, without at least thirty (30) days' prior written notice to Beneficiary. If Trustor fails to provide, maintain, keep in force or deliver and furnish to Beneficiary the policies of insurance required by this Deed of Trust, upon prior notice to Trustor, Beneficiary may procure such insurance or single-interest insurance for such risks covering Beneficiary's interest and pay the premiums for any such insurance. Trustor shall, on demand, pay to Beneficiary the amount of all such premiums incurred by Beneficiary, together with interest thereon from the date of expenditure until paid at the Interest Rate.

     1.4.   _Insurance Proceeds._ If the Property or any part thereof is damaged or destroyed by any casualty, Trustor shall give prompt notice thereof to Beneficiary.

     (a)   Beneficiary shall have the right to receive all proceeds of insurance payable on account of any loss, damage or destruction affecting the Property or any part thereof, and Trustor hereby authorizes and directs each insurance company to pay all such insurance proceeds directly to Beneficiary, provided, however, that Trustor may settle any insurance claim if the effect of the casualty may be remedied for Two Hundred Thousand Dollars ($200,000) or less. Trustor hereby assigns, as security, all such insurance proceeds to Beneficiary, and Trustor agrees to execute such further assignments of such insurance proceeds as Beneficiary may require. Beneficiary shall not be responsible for any failure to collect any insurance proceeds, regardless of the cause of such failure.

     (b)   In the event the Property, or any part thereof, is damaged or destroyed to the extent that such proceeds are required to be paid to Beneficiary, Beneficiary shall hold, release and apply the proceeds therefrom, after deducting all costs and expenses, including attorneys' fees, incurred by Beneficiary in connection with collection thereof, in accordance with the provisions of the Loan Agreement.

     (c)   Such insurance proceeds shall be released by Beneficiary to pay for restoration of the Property and Trustor shall repair all damage and restore the Property to a condition equal to or better than the condition of the Property before the casualty. In the case where such insurance proceeds exceed Two Hundred Thousand Dollars ($200,000), Beneficiary shall have the right, in Beneficiary's reasonable discretion, to establish disbursement procedures and arrangements for lien releases and to condition disbursement of such insurance proceeds, to the extent deemed reasonably necessary by Beneficiary on Trustor's delivering to Beneficiary any or all of the following:

     (i)   Any additional funds that Beneficiary reasonably determines are needed to pay the entire cost of the repair and restoration of the Property;

     (ii)   Plans and specifications for the work reasonably acceptable to Beneficiary prepared by architects and engineers acceptable to Beneficiary with copies of all permits, licenses and approvals required for the work;

(iii)   A contract for the work reasonably acceptable to Beneficiary with a contractor acceptable to Beneficiary;

(iv)   A cost breakdown for the work reasonably acceptable to Beneficiary;

(v)   If determined to be necessary in Beneficiary's reasonable discretion, a performance bond and a labor and material payment bond for the work reasonably acceptable to Beneficiary;

(vi)   Evidence reasonably acceptable to Beneficiary that, after completion of the work, the income from the Property will be sufficient to pay all expenses of the Property and to pay and perform all indebtedness and obligations secured by this Deed of Trust;

(vii)   Evidence reasonably acceptable to Beneficiary that, upon completion of the work, the size, capacity, quality, value and general utility of the Property will be equal to or greater than the condition of the Property before the casualty occurred;

(viii)   Evidence reasonably acceptable to Beneficiary that all prior disbursements of such insurance proceeds were properly applied by Trustor to pay the cost of the work; and

(ix)   Evidence of satisfaction of any additional conditions or requirements that Beneficiary may reasonably establish to protect its security.

Beneficiary shall have no obligation to release any insurance proceeds if any Event of Default exists under this Deed of Trust.

(d)   Except to the extent that such insurance proceeds are received by Beneficiary and applied to the indebtedness secured hereby or otherwise are not released to Trustor, nothing herein shall excuse Trustor from repairing or maintaining the Property in accordance with section 1.1 hereof or restoring all damage to or destruction of the Property, regardless of whether or not there are such insurance proceeds available or whether any such insurance proceeds are sufficient in amount, and the application or release by Beneficiary of any such insurance proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to any such notice.

1.5.   Assignment of Policies upon Foreclosure. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the indebtedness secured hereby, all right, title and interest of Trustor in and to all policies of insurance required by this Deed of Trust shall inure to the benefit of and pass to the successor in interest to Trustor, or the purchaser or grantee of the Property.

1.6.   Taxes, Assessments and Impositions.

(a)   Subject to the right of Trustor to contest in good faith the amount or validity of any of the following in accordance with the provisions of the Loan Agreement,

Trustor agrees to pay prior to delinquency, all real property taxes and assessments, general and special, and all other taxes, assessments, fees, levies and charges of every kind or nature whatsoever, including all nongovernmental levies or assessments such as maintenance charges, owner association dues or charges, or assessments, fees, levies or charges resulting from covenants, conditions or restrictions affecting the Property, which are assessed against or imposed upon the Property, or become due and payable with respect thereto, or which create, may create, appear to create or are secured by a lien upon the Property, or any part thereof (all of which taxes, assessments, fees, levies and charges are hereinafter referred to as "**Impositions**"); provided, however, that if, by law, any such Imposition is payable, or may at the option of Trustor be paid, in installments, Trustor may pay such installments together with any accrued interest on the unpaid balance of such Imposition in installments as such installments become due and before any fine, penalty, interest or cost may be added thereto for the nonpayment of any such installment and interest. If Trustor fails to pay any Impositions as required by this Deed of Trust, Beneficiary may pay such Impositions, and Trustor shall, on demand, pay to Beneficiary the amount of all such Impositions incurred by Beneficiary, together with interest thereon from the date of expenditure until paid at the Interest Rate.

(b)  If at any time after the date hereof there shall be assessed or imposed any tax, assessment, levy or fee on Beneficiary and measured by or based in whole or in part on this Deed of Trust or upon the amount of the outstanding indebtedness or obligations secured hereby (other than any income or franchise tax based on the income of Beneficiary), then all such taxes, assessments, levies and fees shall be deemed to be included within the term "Impositions" as defined in this section 1.6 and Trustor shall pay and discharge the same as herein provided with respect to the payment of Impositions.

(c)  Trustor shall furnish Beneficiary, within thirty (30) days after Trustor's receipt of any request by Beneficiary therefor, official receipts of the appropriate taxing authority, or other proof reasonably satisfactory to Beneficiary, evidencing the payment thereof.

(d)  Trustor agrees not to suffer, permit or initiate the joint assessment of any real and personal property, or any other procedure whereby the lien of the real property taxes and the lien of the personal property taxes shall be assessed, levied or charged to the Property as a single lien.

1.7.  Utilities.  Trustor shall pay or cause to be paid when due all utility assessments and charges for gas, electricity, fuel, water, steam, sewer, drainage, refuse disposal, telephone and other services furnished to or for the benefit of the Property and all other assessments or charges of a similar nature, whether public or private, affecting the Property or any portion thereof, whether or not such assessments or charges are liens on the Property.

1.8.  Actions Affecting Property.  Trustor shall appear in, contest and defend any action or proceeding purporting to affect the Property, the security of this Deed of Trust or the rights or powers of Beneficiary or Trustee under this Deed of Trust. Trustor shall pay all costs and expenses, including cost of evidence of title and attorneys' fees, in any such action or proceeding in which Beneficiary or Trustee may appear.

1.9.  <u>Actions by Trustee or Beneficiary to Preserve Property.</u> If Trustor fails to make any payment or to do any other act as and in the manner provided in any of the Loan Documents, Beneficiary or Trustee, each in its own discretion, without obligation so to do and without notice to or demand upon Trustor (other than the notices required by the Loan Documents and/or applicable law) and without releasing Trustor from any obligation, may make or do the same in such manner and to such extent as either may deem reasonably necessary to protect the security of this Deed of Trust. In connection therewith (without limiting their general powers), Beneficiary and Trustee each shall have and are hereby given the right, but not the obligation: (a) to enter upon and take possession of the Property; (b) to make additions, alterations, repairs and improvements to the Property which they or either of them may reasonably consider necessary or proper to keep the Property in good condition and repair; (c) to appear and participate in any action or proceeding affecting or which may affect the Property, the security of this Deed of Trust, or the rights or powers of Beneficiary or Trustee under this Deed of Trust; (d) to pay, purchase, contest or compromise any encumbrance, claim, charge, lien or debt which in the judgment of either may affect or appears to affect the security of this Deed of Trust or may be prior or superior hereto; and (e) in exercising such powers, to pay necessary expenses, including employment of attorneys or necessary or desirable consultants. Trustor shall, on demand, pay to Beneficiary all amounts paid by Beneficiary and all costs and expenses reasonably incurred by Beneficiary in connection with the exercise by Beneficiary of the foregoing rights, including costs of evidence of title, court costs, appraisals, surveys and reasonable attorneys' fees, together with interest thereon from the date of expenditure until paid at the Interest Rate.

1.10.  <u>Title.</u> Trustor represents and warrants to Beneficiary that (a) Trustor has good and marketable title to the Property, (b) this Deed of Trust is a valid and enforceable lien on the Property, (c) Trustor will maintain and preserve the lien of this Deed of Trust until all indebtedness and obligations secured by this Deed of Trust have been fully paid and performed, and (d) Trustor has full legal right, power and authority to execute and deliver this Deed of Trust and to convey the Property as provided in this Deed of Trust. Trustor shall forever warrant and defend title to the Property as aforesaid against all claims and demands whatsoever.

1.11.  <u>Eminent Domain.</u> If the Property, or any part thereof or interest therein, is taken or damaged by reason of any public improvement or condemnation proceeding, or by exercise of the power of eminent domain, or in any other manner, or if Trustor receives any notice or other information regarding any such proceeding, Trustor shall give prompt notice thereof to Beneficiary.

(a)  Beneficiary shall have the right to receive all proceeds, compensation, awards, damages and other payments on account of any such taking or damage. Beneficiary shall have the right to commence, appear in and prosecute in its own name any action or proceeding and to make any compromise or settlement in connection with any such taking or damage. Trustor hereby assigns, as security, all such proceeds, compensation, awards, damages and other payments to Beneficiary, and Trustor agrees to execute such further assignments of any such proceeds as Beneficiary may require. Beneficiary shall not be responsible for any failure to collect any such proceeds, regardless of the cause of such failure.

{2385554.DOC;2}                                    8

(b) Except to the extent otherwise provided in the Loan Agreement, in the event the Property, or any part thereof or interest therein, is so taken or damaged, Beneficiary shall have the right, in its sole and complete discretion, regardless of any impairment of security or lack thereof, to apply all or any part of such proceeds, after deducting therefrom all costs and expenses, including attorneys' fees, incurred by Beneficiary in connection with such proceeds, (i) to any indebtedness secured hereby and in such order as provided in the Loan Agreement, provided that there shall be no prepayment penalty associated with such reduction in the indebtedness, or (ii) to the restoration of the Property.

(c) If such proceeds are applied by Beneficiary to the restoration of the Property, then to the extent reasonably practicable Trustor shall repair all damage and restore the Property to a condition equal to or better than the condition of the Property before the taking. Beneficiary shall have the right, in Beneficiary's reasonable discretion, to establish disbursement procedures and arrangements for lien releases and to condition disbursement of such proceeds, to the extent deemed reasonably necessary by Beneficiary, on satisfaction of all conditions and requirements set forth in section 1.4(c) hereof. Beneficiary shall have no obligation to release any proceeds if any Event of Default exists under this Deed of Trust.

(d) Except to the extent that such proceeds are received by Beneficiary and applied to the indebtedness secured hereby, nothing herein shall excuse Trustor from repairing or maintaining the Property in accordance with section 1.1 hereof or restoring all damage to or destruction of the Property, regardless of whether or not there are such proceeds available or whether any such proceeds are sufficient in amount, and the application or release by Beneficiary of any such proceeds shall not cure or waive any default or notice of default under this Deed of Trust or invalidate any act done pursuant to any such notice.

1.12. Inspections. Subject to the rights of tenants in possession, Beneficiary, and its agents or representatives, are authorized to enter at any reasonable time upon or in any part of the Property for the purpose of inspecting the same, for the purpose of ascertaining Trustor's compliance with this Deed of Trust, and for the purpose of performing any of the acts Beneficiary is authorized to perform under any of the Loan Documents.

1.13. Further Encumbrances or Transfers. Except only for the liens and security interests in favor of Beneficiary under this Deed of Trust and the other Loan Documents and as otherwise permitted by the Loan Documents, without Beneficiary's prior written consent, which Beneficiary may withhold in its sole discretion, no Trustor shall execute, cause, allow or suffer any deed, mortgage, deed of trust, deed to secure debt, assignment of leases or rents, statutory lien or other lien, or other instrument, irrespective of its priority, to transfer, sell, assign or encumber all or any portion of the Property or the leases, rents or profits thereof, or any interest in any of the foregoing.

1.14. Trustee's Powers. At any time, and from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed of Trust and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee may (a) reconvey any part of the Property, (b) consent in writing to the making of any map or

plat of the Property, (c) join in granting any easement thereon, or (d) join in any extension agreement or any agreement subordinating the lien of this Deed of Trust.

1.15.  Beneficiary's Powers.  Without affecting the liability of any other person liable for the payment or performance of any indebtedness or obligation secured hereby, and without affecting the lien of this Deed of Trust upon any portion of the Property not then or theretofore released as security for the indebtedness and obligations secured hereby, Beneficiary may, from time to time and without notice, (a) release any person so liable, (b) extend the maturity or alter any of the terms of any indebtedness or obligation secured hereby, (c) grant other indulgences, (d) release or reconvey, or cause to be released or reconveyed, any parcel, portion or all of the Property, (e) take or release any other or additional security for any indebtedness or obligation secured hereby, (f) make compositions or other arrangements with debtors in relation to any indebtedness or obligation secured hereby, or (g) advance additional funds to protect the security of this Deed of Trust and pay or discharge the obligations of Trustor hereunder or under the Loan Documents, and Trustor shall, on demand, pay to Beneficiary all amounts so advanced, together with interest thereon from the date of expenditure until paid at the Interest Rate.

1.16.  Indemnification and Waivers.

(a)  If Beneficiary is made a party to any third party litigation or proceeding concerning this Deed of Trust or the Property or any part thereof or interest therein, or the use or occupancy thereof, then Trustor shall indemnify and defend Beneficiary against and hold Beneficiary harmless from all claims, demands, liabilities, losses, damages, costs and expenses, including reasonable attorneys' fees and expenses, incurred by Beneficiary in any such litigation or proceeding, whether or not any such litigation or proceeding is prosecuted to judgment (excluding any claims arising from Beneficiary's gross negligence or willful misconduct).  If Beneficiary commences an action against Trustor to enforce this Deed of Trust or because of the breach by Trustor of this Deed of Trust, or for the recovery of any sum secured hereby, Trustor shall pay to Beneficiary reasonable attorneys' fees and expenses, and the right to such attorneys' fees and expenses shall be deemed to have accrued on the commencement of such action, and shall be enforceable whether or not such action is prosecuted to judgment.

(b)  Trustor waives any and all right to claim or recover against Beneficiary, its directors, officers, employees, agents and representatives, for loss of or damage to Trustor, the Property, Trustor's property or the property of others under Trustor's control from any cause insured against or required to be insured against by this Deed of Trust.

(c)  All sums payable by Trustor hereunder shall be paid without notice, demand, counterclaim, setoff, deduction or defense and without abatement, suspension, deferment, diminution or reduction, and the obligations and liabilities of Trustor hereunder shall in no way be released, discharged or otherwise affected (except as expressly provided herein) by reason of: (i) any damage to or destruction or any condemnation or similar taking of the Property or any part thereof; (ii) any restriction or prevention of or interference with any use of the Property or any part thereof; (iii) any title defect or encumbrance or any eviction from the Real Property or the Improvements or any part thereof by title paramount or otherwise; (iv) any bankruptcy, insolvency, reorganization, composition, adjustment, dissolution, liquidation or other like proceeding relating to Trustor or Beneficiary, or any action taken with respect to this

Deed of Trust by any trustee or receiver of Trustor or Beneficiary, or by any court, in any such proceeding; (v) any claim which Trustor has or might have against Beneficiary; (vi) any default or failure on the part of Beneficiary to perform or comply with any of the terms hereof or of any other agreement with Trustor; or (vii) any other occurrence whatsoever, whether similar or dissimilar to the foregoing, whether or not Trustor shall have notice or knowledge of any of the foregoing, provided that no such payment shall be deemed a waiver of any rights of Trustor. Except as expressly provided herein, Trustor waives all rights now or hereafter conferred by statute or otherwise to any abatement, suspension, deferment, diminution or reduction of any sum secured hereby and payable by Trustor.

## 2.    Assignment of Rents and Profits

2.1    Assignment of Rents.  Trustor hereby absolutely, unconditionally and irrevocably assigns and transfers to Beneficiary all rents, issues, profits, royalties, bonuses, income and other benefits derived from or produced by the Property (the "**rents and profits**").  Trustor hereby gives to and confers upon Beneficiary the right, power and authority to collect the rents and profits.  Trustor irrevocably appoints Beneficiary its true and lawful attorney in fact, at the option of Beneficiary at any time and from time to time, either with or without taking possession of the Property, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Trustor or Beneficiary, for all of the rents and profits and apply the same to the indebtedness secured hereby.  Trustor shall, nevertheless, have a revocable license to collect the rents and profits as they become due and payable (but not more than one (1) month in advance) but only before the occurrence of an Event of Default under this Deed of Trust and as long as no such Event of Default exists.  The assignment of the rents and profits of the Property in this Deed of Trust is intended to be a present and absolute assignment from Trustor to Beneficiary and not merely the creation of a security interest.  Beneficiary's right to collect the rents and profits is not contingent upon Beneficiary's taking possession of the Property.

2.2    Collection upon Default.  Upon the occurrence of an Event of Default under this Deed of Trust, and as long as any such Event of Default exists, Trustor's license to collect the rents and profits shall terminate and Beneficiary shall have the right, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the value of the Property or the adequacy of the security for the indebtedness or obligations secured hereby, to enter upon and take possession of the Property, or any part thereof, in its own name sue for or otherwise collect the rents and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine.  The collection of the rents and profits, or the entering upon and taking possession of the Property, or the application thereof as aforesaid, shall not cure or waive any default, Event of Default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default.

## 3.    Grant of Security Interest

3.1    Security Agreement.  The parties intend for this Deed of Trust to create a lien on the Property, and an absolute assignment of the rents and profits, all in favor of Beneficiary.  The parties acknowledge that some of the Property and some or all of the rents and profits may be

determined under applicable law to be personal property or fixtures. To the extent that any Property or rents and profits may be or be determined to be personal property, Trustor as debtor hereby grants Beneficiary as secured party a security interest in all such Property and rents and profits, to secure payment and performance of the Secured Obligations. This Deed of Trust constitutes a security agreement under the California Uniform Commercial Code, covering all such Property and rents and profits.

3.2     Financing Statements. Trustor shall execute such other documents as Beneficiary may from time to time reasonably require, and authorizes Beneficiary to file one or more financing statements, to perfect or continue the perfection of Beneficiary's security interest in any Property or rents and profits. Trustor shall pay all reasonable fees and costs that Beneficiary may incur in filing such documents in public offices and in obtaining such record searches as Beneficiary may reasonably require. In case Trustor fails to execute any financing statements or other documents for the perfection or continuation of any security interest, Trustor hereby appoints Beneficiary as its true and lawful attorney in fact to execute any such documents on its behalf. If any financing statement or other document is filed in the records normally pertaining to personal property, that filing shall never be construed as in any way derogating from or impairing this Deed of Trust or the rights or obligations of the parties under it. The inclusion of any items in a financing statement not included in the collateral under the Loan Documents does not render such filing unauthorized unless such items are included in bad faith.

4.     Fixture Filing

This Deed of Trust is also a financing statement (fixture filing) under the Uniform Commercial Code as in effect in the State of California, covers goods which are or are to become fixtures, and is to be recorded in the real estate records. Trustor is a record owner of the Real Property.

5.     Remedies Upon Default

5.1     Events of Default. The occurrence of any of the following events shall be an event of default ("**Event of Default**") under this Deed of Trust:

(a)     Trustor fails to perform any obligation to pay money which arises under this Deed of Trust, and does not cure that failure within ten (10) days after written notice from Beneficiary or Trustee; or

(b)     Trustor fails to perform any obligation arising under this Deed of Trust other than one to pay money, and does not cure that failure either within thirty (30) days ("**Initial Cure Period**") after written notice from Beneficiary or Trustee, or within ninety (90) days after such written notice, so long as Trustor begins within the Initial Cure Period and diligently continues to cure the failure, and Beneficiary, exercising reasonable judgment, determines that the cure cannot reasonably be completed at or before expiration of the Initial Cure Period; or

(c)     A writ of execution or attachment or any similar process is issued or levied against all or any part of the Property or any interest therein, or any judgment is entered against Trustor which becomes a lien on the Property or any part thereof or interest therein, and

such execution, attachment or similar process or judgment is not released, vacated or stayed within sixty (60) days after its issuance, levy or entry; or

(d)     An Event of Default (as defined in the Note or Loan Agreement) occurs.

5.2     Acceleration and Certain Remedies.  If any Event of Default under this Deed of Trust occurs, and as long as any such Event of Default exists, Beneficiary shall have the right to declare all indebtedness secured hereby to be immediately due and payable, and all such indebtedness shall thereupon become immediately due and payable, without any presentment, demand, protest or notice of any kind, all of which are expressly waived by Trustor, and Beneficiary shall have the following remedies:

(a)     Beneficiary shall have the right, subject to the rights of Tenants under the Leases, either in person or by agent, with or without bringing any action or proceeding, or by a receiver appointed by a court and without regard to the adequacy of the security, to enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee, and do any acts which Beneficiary deems necessary or desirable to preserve the value, marketability or rentability of the Property or increase the income therefrom or protect the security hereof, and, with or without taking possession of the Property, to sue for or otherwise collect the rents and profits of the Property, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, all in such order as Beneficiary may determine.  The entering upon and taking possession of the Property, the collection of the rents and profits, and the application thereof as aforesaid shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default and, notwithstanding the continuance in possession of the Property or the collection, receipt and application of the rents and profits, Trustee or Beneficiary shall be entitled to exercise every right or remedy provided for in any of the Loan Documents or by law upon the occurrence of any Event of Default under this Deed of Trust, including the right to exercise the power of sale.

(b)     Beneficiary shall have the right to commence an action to foreclose this Deed of Trust as a mortgage, appoint a receiver, or specifically enforce any of the covenants hereof.

(c)     Beneficiary shall have the right to deliver to Trustee a written declaration of default and demand for sale pursuant to the power of sale in this Deed of Trust.

5.3     Foreclosure by Power of Sale.  If Beneficiary elects to foreclose this Deed of Trust by exercise of the power of sale in this Deed of Trust, Beneficiary shall notify Trustee and shall deposit with Trustee such written notice of default and election to sell and such receipts or evidence of expenditures made and secured hereby as Trustee may require.

(a)     Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and election to sell as may then be required by law and by this Deed of Trust.  Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law after recordation of such notice of default and election to sell, and after notice of sale has been given as may then be required by law, sell

the Property at the time and place of sale fixed by Trustee in such notice of sale, either as a whole or in separate lots or parcels or items as determined solely by Beneficiary, and in such order as Beneficiary alone may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at the time of sale. Trustor waives, and relinquishes to Beneficiary, all rights to direct the order in which the Property shall be sold or to require that the Property be sold in separate lots or parcels or items. Trustee shall deliver to such purchaser or purchasers Trustee's deed or deeds (and, if applicable, bill of sale or bills of sale) conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed or bill of sale of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at such sale and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers.

(b)   After deducting all costs, fees and expenses of Trustee and of this trust, including costs of evidence of title in connection with the sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under this Deed of Trust, not then repaid, with interest thereon from the date of expenditure until paid at the Interest Rate; all indebtedness and other obligations secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(c)   Trustee may postpone sale of all or any portion of the Property by public announcement at the time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time and place fixed by the preceding postponement or subsequently noticed sale, and without further notice make such sale at the time and place fixed by the last postponement, or may, in its discretion, give a new notice of sale.

(d)   The power of sale under this Deed of Trust shall not be exhausted by any one or more sales (or attempts to sell) as to all or any portion of the Property remaining unsold, but shall continue unimpaired until all of the Property has been sold by exercise of the power of sale in this Deed of Trust and all indebtedness and obligations secured by this Deed of Trust have been paid and discharged in full.

5.4   Appointment of Receiver. If an Event of Default under this Deed of Trust occurs, and as long as any such Event of Default exists, Beneficiary, as a matter of right and without notice to Trustor or anyone claiming under Trustor, and without regard to the adequacy of the security or the then value of the Property or the interest of Trustor therein, shall have the right to have a receiver or receivers of the Property appointed by any court having jurisdiction, and Trustor hereby irrevocably consents to such appointment. Any such receiver or receivers shall have all the usual powers and duties of receivers in like or similar cases and all the powers of Beneficiary in case of entry as provided in section 5.2 hereof and shall continue as such and exercise all such powers until the date of confirmation of sale of the Property unless such receivership is sooner terminated.

5.5   Remedies Not Exclusive. Every right, power and remedy granted to Trustee or Beneficiary in this Deed of Trust shall be cumulative and not exclusive, and in addition to all rights, powers and remedies granted at law or in equity or by statute, and each such right, power and remedy may be exercised from time to time and as often and in such order as may be deemed expedient by Trustee or Beneficiary, and the exercise of any such right, power or

{2385554.DOC;2}                                   14

remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy.

5.6    Additional Security. If Beneficiary at any time holds additional security for any of the indebtedness or obligations secured hereby, Beneficiary may enforce the sale thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder.

5.7    Request for Notice. Trustor hereby requests that a copy of any notice of default and of any notice of sale under this Deed of Trust be mailed to Trustor at the address of Trustor set forth in this Deed of Trust as required by applicable law.

6.    Additional Provisions

6.1    Trustor Waiver of Rights. Trustor hereby waives the right to assert any statute of limitations as a bar to the enforcement of this Deed of Trust or to any action brought to enforce any indebtedness or obligation secured by this Deed of Trust. Notwithstanding the existence of any other liens or security interests in the Property held by Beneficiary or by any other party, Beneficiary shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided herein. Beneficiary shall have the right to determine the order in which the indebtedness secured hereby is satisfied from the proceeds realized upon the exercise of the remedies provided herein. Trustor, any party who consents to this Deed of Trust, and any party who now or hereafter acquires a lien or security interest in the Property and who has actual or constructive notice of this Deed of Trust hereby expressly waives and relinquishes any and all rights to demand or require the marshaling of liens or the marshaling of assets by Beneficiary in connection with the exercise of any of the remedies provided herein or permitted by applicable law. Trustor expressly waives and relinquishes any and all rights and remedies Trustor may have or be able to assert by reason of laws relating to the rights and remedies of sureties or guarantors.

6.2    Offset Statements. Trustor, within ten (10) days after notice, shall furnish to Beneficiary a written statement stating the unpaid principal of and interest on the indebtedness secured by this Deed of Trust and stating whether any offset or defense exists against such principal, interest or indebtedness.

6.3    Reconveyance by Trustee. Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust to Trustee for cancellation and retention, and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to Trustor, or the person or persons legally entitled thereto, without warranty, any portion of the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

6.4    Beneficiary Statements. Trustor agrees to pay Beneficiary for each statement of Beneficiary requested by Trustor regarding the obligations secured hereby the maximum fee allowed by law or, if there is no maximum fee, such reasonable fee as is then charged by Beneficiary for such statement.

6.5     Acceptance by Trustee. Trustee accepts this trust when this Deed of Trust, duly executed and acknowledged, is made a public record as provided by law. The trust hereby created shall be irrevocable by Trustor.

6.6     Appointment of Successor Trustee. Beneficiary may, from time to time, by a written instrument executed and acknowledged by Beneficiary and recorded in the county in which the Property is located, and by otherwise complying with applicable law, substitute a successor or successors to the Trustee named herein or acting hereunder.

6.7     Invalidity of Certain Provisions. If the lien of this Deed of Trust is invalid or unenforceable as to any part of the indebtedness or obligations secured hereby, or if such lien is invalid or unenforceable as to any part of the Property, the unsecured or partially secured portion of such indebtedness and obligations shall be completely paid prior to the payment of the remaining and secured or partially secured portion, and all payments made, whether voluntary or under foreclosure or other enforcement action or procedure, shall be considered to have been first paid on and applied to the full payment of that portion of such indebtedness and obligations which is not secured or not fully secured by the lien of this Deed of Trust. The invalidity of any provision of this Deed of Trust shall not affect the remaining provisions of this Deed of Trust or any part thereof and this Deed of Trust shall be construed as if such invalid provision, if any, had not been inserted herein.

6.8     Subrogation. To the extent that proceeds of the indebtedness secured by this Deed of Trust are used to pay any outstanding lien, charge or prior encumbrance against the Property, such proceeds or advances have been or will be advanced by Beneficiary at Trustor's request and Beneficiary shall be subrogated to any and all rights and liens held by any owner or holder of such outstanding liens, charges and prior encumbrances, irrespective of whether such liens, charges or encumbrances are released.

6.9     Nonwaiver. The acceptance by Beneficiary of any sum after the same is due shall not constitute a waiver of the right either to require prompt payment, when due, of all other sums hereby secured or to declare a default as herein provided. The acceptance by Beneficiary of any sum in an amount less than the sum then due shall be deemed an acceptance on account only and upon condition that it shall not constitute a waiver of the obligation of Trustor to pay the entire sum then due, and Trustor's failure to pay such entire sum then due shall be and continue to be a default notwithstanding such acceptance of such amount on account, as aforesaid, and Beneficiary or Trustee shall, at all times thereafter and until the entire sum then due has been paid, and notwithstanding the acceptance by Beneficiary thereafter of further sums on account, or otherwise, be entitled to exercise all rights in this Deed of Trust conferred upon them, or either of them, upon the occurrence of a default, and the right to proceed with a sale under any notice of default, and election to sell, shall in no way be impaired, whether any of such amounts are received prior or subsequent to such notice. Consent or approval by Beneficiary to any transaction or action of Trustor which is subject to consent or approval of Beneficiary hereunder shall not be deemed a waiver of the right to require such consent or approval to future or successive transactions or actions. This Deed of Trust cannot be waived, amended, modified, changed, discharged or terminated orally, but only by an instrument in writing signed by Trustor and Beneficiary.

6.10    Disclosure of Information. Trustor acknowledges that Beneficiary has the right to sell, assign, transfer, negotiate or grant participations in all or any part of, or any interest in, any indebtedness of Trustor to Beneficiary and any obligations with respect thereto, including this Deed of Trust, provided however that in the event of any such assignment, there shall at all times be only one primary lender or loan servicing agent with rights and powers to administer this Deed of Trust and receive notices hereunder. In connection therewith, Beneficiary may disclose all documents and information which Beneficiary now has or hereafter acquires relating to Trustor, the Property, and/or this Deed of Trust, whether furnished by Trustor or from some other source.

7.    Miscellaneous.

7.1.    Notices. Unless otherwise specifically provided herein, any notice or other communication required or permitted to be given shall be in writing and addressed to the respective party as set forth below. Notices shall be effective when actually delivered by any commercially reasonable means, provided that if such delivery occurs on any day other than a Business Day or after the close of business on any Business Day, the same shall be effective on the next Business Day. Further, notices sent by certified or registered mail, return receipt requested, or by nationally recognized express courier service, shall be effective on the earlier of (i) actual delivery or (ii) refusal to accept delivery or on failure of delivery because the recipient address is not open to receive deliveries between 9:00 a.m. and 5:00 p.m. on any Business Day. Notices sent by telecopy or other electronic means shall be effective only if also sent by nationally recognized express courier service for delivery on the next business Day.

| TO TRUSTOR: | 12th & K St. Mall Partners, LLC<br>30012 Ivy Glenn Drive, Suite 200<br>Laguna Niguel, CA 92677<br>Attention: Robert W. Clippinger |
|---|---|
| TO TRUSTEE: | First American Title Company<br>4 First American Way<br>Santa Ana, CA 92707 |
| TO BENEFICIARY: | Sacramento Bank of Commerce<br>1504 Eureka Road, Suite 100<br>Roseville, CA 95661<br>Attention: Scott Holthaus |

Any party may change the address at which it is to receive notices to another address in the United States at which business is conducted (and not a post office box or other similar receptacle), by giving notice of such change of address in accordance with the foregoing. This provision shall not invalidate or impose additional requirements for the delivery or effectiveness of any notice (i) given in accordance with applicable statutes or rules of court, or (ii) by service of process in accordance with applicable law. **"Business Day"** is any day other than a Saturday or Sunday on which Beneficiary is open for business. Trustor hereby requests that any notice of

default or notice of sale in any judicial or non-judicial foreclosure proceeding be mailed to Trustor at its address as specified herein.

7.2.    Governing Law. The validity, interpretation, and enforcement of this Deed of Trust shall be governed by and construed in accordance with the laws of the State of California without giving effect to the conflict of law principles thereof.

7.3.    Entire Agreement. This Deed of Trust, the Loan Agreement and the Loan Documents contain the entire agreement among the parties to this Deed of Trust and supersede all prior oral or written agreements, promises, representations, commitments or understandings with respect to the matters provided for in this Deed of Trust, the Loan Agreement, and the Loan Documents. The Recitals to this Deed of Trust are incorporated into this Deed of Trust as contractual terms.

7.4.    Amendments. The terms and provisions of this Deed of Trust shall not be amended, modified or waived, nor shall any consent of any departure by Trustor from any provision be effective, except in a writing executed by Trustor and a duly authorized officer of Beneficiary.

7.5.    Waiver. No delay in exercising any right or power hereunder shall operate as a waiver, and no waiver of any right or power or consent by Beneficiary shall be valid unless in writing. The failure of Beneficiary to insist upon strict compliance with any of the terms of this Deed of Trust shall not be considered to be a waiver of any such terms, nor shall it prevent Beneficiary from insisting upon strict compliance with this Deed of Trust at any time thereafter. If Beneficiary delays in exercising or fails to exercise any right or remedy against Trustor, that alone shall not be construed as a waiver of such right or remedy. All remedies of Beneficiary against Trustor are cumulative.

7.6.    Severability. If any provision of this Deed of Trust is invalid or unenforceable in any jurisdiction, then, to the fullest extent permitted by law: (i) the other provisions of this Deed of Trust shall remain in full force and effect in such jurisdiction and shall be liberally construed in favor of Beneficiary in order to carry out the intentions of the parties to this Deed of Trust as nearly as may be possible; and (ii) the invalidity or unenforceability of any provision of this Deed of Trust in any jurisdiction shall not affect the validity or enforceability of such provision in any other jurisdiction.

7.7.    Interpretation. In this Deed of Trust, the word "person" includes any individual, company, trust, or other legal entity of any kind. If this Deed of Trust is executed by more than one (1) person, the word "Trustor" includes all such persons. The word "include(s) means "include(s), without limitation," and the word "including" means "including, but not limited to." When the context and construction so require, all words used in the singular shall be deemed to have been used in the plural and vice versa.

7.8.    Assignments. The Trustor shall not have the right to assign the Property or this Deed of Trust or any interest therein unless the Beneficiary shall have given the Trustor prior written consent and the Trustor and its assignee shall have delivered assignment documentation

in form and substance satisfactory to the Beneficiary in its sole discretion. The Beneficiary may assign its rights and delegate its obligations under this Deed of Trust.

7.9.    Successors and Assigns. All rights, benefits and privileges under this Deed of Trust shall inure to the benefit of and be enforceable by Beneficiary and the successors and assigns of Beneficiary and shall be binding upon Trustor and the heirs, representatives, successors and assigns of Trustor.

7.10.    Survival of Provisions. All representations, warranties, and covenants of the Trustor contained herein shall survive the execution and delivery of this Deed of Trust, and shall terminate only upon the full and final payment and performance by the Trustor of the obligations secured hereby.

7.11.    Attorney's Fees. In the event of any action or proceeding at law or in equity between any or all of the undersigned and any party who is entitled to enforce any of the provisions of this Deed of Trust (including, without limitation, an action or proceeding between any party who is entitled to enforce any of the provisions of this Deed of Trust and the trustee or debtor in possession while any such undersigned party is a debtor in a proceeding under the Bankruptcy Code (Title 11 of the United States Code or any successor statute to such Code)), to enforce or interpret any provision of this Deed of Trust or to protect or establish any right or remedy hereunder, the unsuccessful party to such action or proceeding shall pay to the prevailing party all costs and expenses, including, without limitation, reasonable attorneys' and paralegals' fees and expenses and court costs incurred in such action or proceeding and in any post-judgment motion, contempt proceeding, discovery, bankruptcy action or appeal in connection therewith, whether or not such action, proceeding, motion or appeal is prosecuted to judgment or other final determination, together with all costs of enforcement and/or collection of any judgment or other relief. The term "prevailing party, shall include, without limitation, a party who obtains legal counsel or brings an action against the other by reason of the other's breach or default and obtains substantially the relief sought, whether by compromise, settlement or judgment. If such prevailing party shall obtain a judgment in any such action, motion, proceeding or appeal, such costs, expenses and attorneys' and paralegals' fees and expenses and court costs shall be included in and shall be a part of such judgment, and any judgment or order entered in any such action, proceeding, motion or appeal shall contain a specific provision for the recovery of such fees, costs and expenses incurred in enforcing such judgment or order.

7.12.    Venue; Service of Process. Any legal action or proceeding with respect to this Deed of Trust or any other Loan Document may be brought in the courts of the State of California situated in Sacramento County, or of the United States of America for the Eastern District of California, and, by execution and delivery of this Deed of Trust, the Trustor hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. The Trustor hereby irrevocably waives, in connection with any such action or proceeding, (a) any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, that it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions and (b) the right to interpose any noncompulsory setoff, counterclaim, or cross-claim. The Trustor irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to

the Trustor at the address for it specified above.  Nothing herein shall affect the right of the Beneficiary to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Trustor in any other jurisdiction, subject in each instance to the provisions hereof with respect to rights and remedies.

**THIS AGREEMENT AND THE OTHER WRITTEN LOAN DOCUMENTS REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, Trustor has executed this Deed of Trust as of the date first hereinabove written.

**TRUSTOR:**

**12th & K St. Mall Partners, LLC,**
a California limited liability company

By: _____

Robert W. Clippinger

Its: Manager

AKA
Robert Clippinger

A notary public or other officer completing this certificate verifies only the identity of the
individual who signed the document to which this certificate is attached, and not the
truthfulness, accuracy, or validity of that document.

State of California )
County of _____ Los Angeles )

On 2/9/18 _____ before me, Tatiana J Conte _____, Notary Public,
personally appeared _____ Robert Clippinger who proved to me on the basis of
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or
the entity(ies) upon behalf of which the person(s) acted, executed the instrument. I certify under
PENALTY of PERJURY under the laws of the State of California that the foregoing paragraph
is true and correct.

WITNESS my hand and official seal.

_____ (Seal)

## EXHIBIT A

### TO

### DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND FIXTURE FILING

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SACRAMENTO, COUNTY OF SACRAMENTO, STATE OF CALIFORNIA AND IS DESCRIBED AS FOLLOWS:

LOT 5, BLOCK BOUNDED BY 11TH AND 12TH STREETS AND J AND K STREETS IN THE CITY OF SACRAMENTO ACCORDING TO THE OFFICIAL MAP THEREOF.

APN: 006-0105-009-0000

# EXHIBIT "C"

*CERTIFIED AS TRUE COPY*
*DEED OF TRUST AND*
OF *ASSIGNMENT OF RENTS*
*FEBRUARY 24, 2005*
DATE CERTIFIED
*D. Concolino*
CITY CLERK, CITY OF SACRAMENTO

NO FEE DOCUMENT:
Entitled to free recording
per Government Code 6103.

When recorded, return to:
 SACRAMENTO HOUSING AND
 REDEVELOPMENT AGENCY
 630 "I" Street
 Sacramento, CA  95814
 Attention:  Legal Department

With a copy sent to:
CITY OF SACRAMENTO ECONOMIC DEVELOPMENT DEPT.
1030 15TH Street, 2nd floor
Sacramento, CA  95814
Attn: Laura Sainz

---

# DEED OF TRUST AND ASSIGNMENT OF RENTS
## 12Th & K Street Redevelopment Project

For purposes of this Deed of Trust he following capitalized terms shall have the meanings ascribed in the space adjacent to them:

| TERM | DEFINITION | |
|---|---|---|
| "Effective Date" | Date of Recording | |
| "Trustor" and "Borrower" | 12th & K St. Mall Partners, LLC | |
| "Borrower Address" | 30131 Town Center Drive, Suite 242, Laguna Niguel, CA 92677 | |
| "Trustee" | Chicago Title Company | |
| "Beneficiary" and "Lender" | Redevelopment Agency of the City of Sacramento, a public body, corporate and politic | |
| "Lender Address" | 630 I Street, Sacramento, California 95814 | |
| "Property" | Which is real property located in the County of Sacramento and the State of California as more particularly described in the Legal Description. | |
| | Address | 1131 K Street, Sacramento, CA 95814 |
| | Assessor's Parcel Number | 006-0105-009 |
| "Legal Description" | The Legal Description of the Property  which is more particularly described in the attached **Exhibit 1) Legal Description**, which is an incorporated in and an integral part of this Deed of Trust | |
| "Loan" | Which is Lender's loan to Borrower evidenced by the Note and which is secured by this Deed of Trust. | |
| "Loan Agreement" | Which is the agreement between Lender and Borrower stating the term and conditions of the Loan. | |
| | Which will be effective on the date of recording. | |
| "Additional Notices" | Lender shall give copies of notices required to be delivered to Borrower to the following parties at the following addresses; provided, however that Borrower acknowledges that such notice is an accommodation and the failure of the Lender to properly deliver any such notice shall not give rise to any claims or defenses of Borrower or any third party: | |
| | none | |

Page 1

| "Note" | Which is Borrower's note made in accordance with the Loan Agreement securing the following principal sum or such lesser amount as shall equal the aggregate amount disbursed to Borrower by Lender, with interest. | |
| | Which has a principal sum of | Two Million Three Hundred Thousand Dollars and No Cents ($2,300,000.00) |

THIS DEED OF TRUST is made as of the Effective Date between the Trustor also referenced as the Borrower, the Trustee, and the Beneficiary also referenced as Lender.

Borrower, in consideration of the indebtedness described below and the trust created by this Deed of Trust, irrevocably grants and conveys the Property to Trustee, in trust with power of sale.

Together with all the improvements now or subsequently erected on the property, and all easements, rights, appurtenances, rents (subject, however, to the rights and authorities given to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures, including but not limited to all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating equipment, steam and hot water boilers, stoves, ranges, elevators and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating equipment, cabinets, mantels, refrigerating plant and refrigerators, whether mechanical or otherwise, cooking apparatus and appurtenances, furniture, shades, awnings, screens, venetian blinds and other furnishings, now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are referred to as the "Property";

To secure to Lender (a) the repayment of the Loan; and (b) the performance of the covenants and agreements of Borrower contained in this Deed of Trust, the Note, or the Loan Agreement.

Borrower covenants that Borrower is lawfully seized of the estate conveyed by this Deed of Trust and has the right to grant and convey the Property, and that Borrower will warrant and defend generally the title of the Property against all claims and demands, subject to any declarations, easements or restrictions listed in a schedule of exceptions to coverage in any title insurance policy insuring Lender's interest in the Property.

Borrower and Lender covenant and agree as follows:

1.   Payment of Principal and Interest.  Borrower shall promptly pay when due the principal and interest, if any, on the indebtedness evidenced by the Note.  All payments received by Lender under the Note shall be applied by Lender first to interest payable on the Note and thereafter to the unpaid principal of the Note.

2.   Charges; Liens.  Borrower shall pay all taxes, assessments and other charges, fines and impositions attributable to the Property and leasehold payments or ground rents, if any by Borrower making payment, when due, directly to the appropriate payee.  Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and in the event that Borrower makes payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments.  Borrower shall pay when due any encumbrance, charge and lien, with interest in accordance with its terms, on the Property or any portion which are inferior or superior to this Deed of Trust.

3.   Hazard Insurance.  Borrower shall keep the improvements now existing or later erected on the Property insured against loss of fire or hazards under a policy approved by Lender consistent with the insurance requirements of the Loan Agreement.  In addition, Borrower shall insure against loss of all furniture, equipment and other personal property owned by Borrower related to Borrower's operation of the Property.  Lender shall have the right to hold the policies and policy renewals, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums.  In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender.  Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, as and to the extent provided in the Loan Agreement.

Unless Lender and Borrower otherwise agree in writing, any such application of insurance proceeds to principal shall not extend or postpone the due date of any Loan payment or change the amount of such payment. If the Property is acquired by Lender pursuant to this Deed of Trust, all right, title and interest of Borrower in and to any insurance policies and proceeds of such policies resulting from damage to the Property prior to the sale of acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately prior to such sale or acquisition.

4.    Liability Insurance.  In addition to the casualty insurance required under the Loan Agreement during the course of construction, Borrower shall keep comprehensive general liability insurance for the Property in a form and coverage consistent with the provisions of the Loan Agreement and reasonably approved by Lender.

5.    Preservation and Maintenance of Property.  Borrower shall keep the Property in good repair and shall not commit waste or permit impairment, demolition, or deterioration of the Property.

6.    Protection of Lender's Security.  Borrower shall appear and defend any action or proceeding purporting to affect the security under this Deed of Trust or the rights of the Lender.  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, including, but not limited to, foreclosure, involuntary sale, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decadant, then Lender may, upon notice to Borrower, make such appearances, disburse such sums and take such action as are necessary to protect Lender's interest, including, but not limited to, disbursement of judgments, costs or reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this Section 6, with interest, shall become additional indebtedness of Borrower secured by this Deed of Trust.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment, and shall bear interest from the date of disbursement at the highest rate permissible under applicable law.  In any event, this Section shall be construed as a right and an option of Lender and shall not be construed to require Lender to incur any expense or take any action.

7.    Inspection.  Lender, by its designated representative, may make reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower and any occupant of the Property reasonable prior notice of any such inspection.

8.    Condemnation.  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of all or any part of the Property, or for conveyance in lieu of condemnation, shall be applied as provided in the Loan Agreement.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of any payment or change the amount of such payment.

9.    Borrower Not Released.  Extension of the time for payment of the sums secured by this Deed of Trust granted by Lender to Borrower or any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest.  Lender shall not be required to commence proceedings against such successor or refuse to extend time payment by reason of any demand made by the original Borrower or Borrower's successors in interest.

Page 3

10. _Forbearance by Lender Not a Waiver_. Any forbearance by Lender in exercising any right or remedy under this Deed of Trust, or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any such right or remedy. The procurement of insurance or the payment of taxes or other liens or charges by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

11. _Remedies Cumulative_. All remedies provided in this Deed of Trust are distinct and cumulative to any other right or remedy under this Deed of Trust, the Note, the Loan Agreement or afforded by law or equity, and may be exercised concurrently, independently or successively.

12. _Successors and Assigns Bound; Joint and Several Liability Captions_. The covenants and agreements contained in this Deed of Trust shall bind, and the rights under this Deed of Trust shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of Section 15. All covenants and agreements of Borrower shall be joint and several. The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or to define its provisions.

13. _Notice_. Except for any notice required under applicable law to be given in another manner, any notice to be given under this Deed of Trust shall be given as provided for in the Loan Agreement. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated.

14. _Governing Law; Severability_. This Deed of Trust shall be governed by the law of the State of California. If any term or provision of this Deed of Trust, to any extent, be held invalid or unenforceable, the remainder of this Deed of Trust shall remain in full force and effect, and, the invalid or unenforceable provision shall be valid and enforceable as to any other person or circumstance.

15. _Acceleration on Transfer or Refinancing of the Property; Assumption_. If all or any part of the Property or an interest in the Property is sold or transferred or refinanced by Borrower without Lender's prior written consent, Lender may, at Lender's option, declare all the sums secured by this Deed of Trust to be immediately due and payable. Lender shall have waived such option to accelerate if, prior to the refinancing, sale or transfer, Lender and the person to whom the Property is to be sold or transferred reach agreement in writing that the loan may be assumed. If Lender has waived the option to accelerate provided in this Section and if Borrower's successor in interest has executed a written assumption agreement accepted in writing by Lender, Lender shall release Borrower from all obligations under this Deed of Trust and the Note.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period of not less than 30 days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by this Deed of Trust.

16. _Acceleration on Breach; Remedies_. Except as provided in Section 15, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, the Note, (including the covenants to pay when due any sums secured by this Deed of Trust and restricting transfer of the Property) or Loan Agreement, Lender shall mail notice to Borrower specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, no less than 30 days from the date the notice is mailed to Borrower, by which breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. If the breach is not cured on or before the date specified in the notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect from the Borrower, or sale proceeds, if any, all reasonable costs and expenses incurred in pursuing the remedies provided in this Section, including, but not limited to reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any portion of the Property is located. Lender or Trustee shall mail

copies of such notice in the manner prescribed by applicable law to Borrower and to the other persons prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale, in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements it contains. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorney's fees and costs of title evidence; (b) to all sums secured by this Deed of Trust and (c) the excess, if any, to the person or persons legally entitled thereto as determined by Lender. In the event of a dispute regarding the excess funds, either Lender or Trustee may file an action in interpleader to determine who shall receive the funds and may then deposit the excess funds with the court.

17.  Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security, Borrower assigns to Lender the rents of the Property, provided that Borrower shall, prior to an acceleration for breach as provided above or abandonment of the Property, have the right to collect such rents as they become due.

Upon acceleration for breach or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender, its agent, or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to receiver's fees, premiums on receiver's bonds and reasonable attorney's fees, and then to the sums secured by this Deed of Trust. Lender, its agent and the receiver shall be liable to account only for those rents actually received.

18.  Prior Lien holder. The provisions of this Deed of Trust shall operate subject to the claims of prior lien holders to the extent of such claims.

19.  Nonrecourse. Notwithstanding any provision of this Deed of Trust or any document evidencing or securing this Loan, Borrower, and Borrower's principals, agent, officer, and successors in interest shall not be personally liable for the payment of the Loan or any obligation of the Loan.

20.  Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and without charge to the person or persons legally entitled to such reconveyance. Such person or persons shall pay all costs of recordation, if any. The recitals in the reconveyance of any matters or facts shall be conclusive proof of their truthfulness.

21.  Substitute Trustee. Lender, at Lender's option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed under this Deed of Trust. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

22.  Request for Notice. Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address.

23.  Statement of Obligation. Lender may collect a reasonable fee for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California, as it may be amended from time to time.

24.  Use of Property. Borrower shall not permit or suffer the use of any of the Property for any purpose other than the use for which the same was intended at the time this Deed of Trust was executed.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

BORROWER (Trustor):
12TH & K ST. MALL PARTNERS, LLC

By: _____          2-22-05
Robert W. Clippinger, Manager

STATE OF CALIFORNIA          )
                            )ss.
COUNTY OF SACRAMENTO         )

On _February 22_____, 2005 before me _Denise M. Malvetti_ personally appeared Robert W. Clippinger, personally known to me or proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Denise M Malvetti_

Notary Public in and for said County and State
Commission Expires: _2-01-08_____

DENISE M. MALVETTI
Commission # 1467326
Notary Public - California
Solano County
My Comm. Expires Feb 1, 2008

**Deed of Trust and Assignment of Rents**
**Exhibit 1: Legal Description**

All that certain real property situate in the City of Sacramento, County of Sacramento, State of California, described as follows:

Lot 5, Block bounded by 11th and 12th Streets and "J" and "K" Streets, in the City of Sacramento, according to the Official Map thereof.

APN No: 006-0105-009-0000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

17609 Ventura Blvd., Suite 314, Encino, CA 91316.

A true and correct copy of the foregoing document entitled (*specify*): MOTION FOR AUTHORITY TO USE CASH
COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF ROBERT W. CLIPPINGER IN
SUPPORT THEREOF

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)
02/02/2022_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that
the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated
below:

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) __02/02/2022_____, I served the following persons and/or entities at the last known addresses in this bankruptcy
case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail,
first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the
judge will be completed no later than 24 hours after the document is filed.

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served
the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 02/02/2022 | Max Bonilla | /s/ Max Bonilla |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                          **F 9013-3.1.PROOF.SERVICE**

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>
<u>**[CONTINUED]**</u>:

- <u>Counsel for DCR Mortgage</u> Howard Camhi    hcamhi@mrllp.com,
  bankruptcy@mrllp.com;camhihr98234@notify.bestcase.com;wgenovese@mrllp.
  com;jkissinger@mrllp.com
- <u>Counsel for Ellajack, Inc.</u> Charles L
  Hastings    chastings@hastingslawoffice.com, hastlaw@aol.com
- <u>Counsel for US Trustee</u> Ron Maroko    ron.maroko@usdoj.gov
- <u>Counsel for Debtor</u> Roksana D. Moradi-Brovia    roksana@rhmfirm.com,
  matt@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.co
  m;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rhmfi
  rm.com;david@rhmfirm.com;sloan@rhmfirm.com
- <u>Counsel for DCR Mortgage</u> Jennifer Pruski    jpruski@trainorfairbrook.com
- <u>Counsel for Debtor</u> Matthew D. Resnik    matt@rhmfirm.com,
  roksana@rhmfirm.com;rosario@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm
  .com;priscilla@rhmfirm.com;pardis@rhmfirm.com;russ@rhmfirm.com;rebeca@rh
  mfirm.com;david@rhmfirm.com;sloan@rhmfirm.com
- <u>Counsel for DCR Mortgage</u> Jivko Tchakarov    jtchakarov@mrllp.com,
  kreynolds@mrllp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

**2.** <u>**SERVED BY UNITED STATES MAIL [CONTINUED]**</u>:

Hon. Barry Russell
U.S. Bankruptcy Court                              12th and K St. Mall Partners, LLC
Central District – L.A. Division                   4910 W. 1st Street
255 E. Temple Street, Suite 1660                   Los Angeles, CA 90004
Los Angeles, CA 90012

<u>***SECURED CREDITORS ALL SERVED VIA CERTIFIED MAIL:***</u>

*Senior lienholder - DCR Mortgage 10 Sub 2, LLC*

<u>Entity Address from Secured Creditor's Notice of Non-Consent to Use of Cash</u>
<u>Collateral and Motion for Sequestration</u> *(counsel is also listed for service via NEF):*

Howard I. Camhi
MICHELMAN & ROBINSON, LLP
10880 Wilshire Blvd., 19th Floor
Los Angeles, CA 90024

*Junior lienholder - City of Sacramento*

Entity Address from Schedules:

City of Sacramento
Attn: Leslie Fritzsche
1030 15th Street, 2nd FL
Sacramento, CA 95814

Entity Addresses from its Website:

Sacramento City Hall
915 I Street
Sacramento, CA 95814

Office of the City Attorney
915 I Street, 4th Floor
Sacramento, CA 95814-2608

Entity Addresses from Deed of Trust:

Sacramento Housing and Redevelopment Agency
Attn: Legal Department
630 I Street
Sacramento, CA 95814

City of Sacramento Economic Development Dept.
Attn: Laura Sainz
1030 15th Street, 2nd FL
Sacramento, CA 95814

### ***INTEREST HOLDERS:***

Chicago Trust Admin. Servcies LLC
FBO Mitch Argon 401-K
40 E Chicago Avenue#148
Chicago, IL 60611

Daniel & Julie Gray Trustees
of the Gray Living Trust 4/26/07
17 N. Pasture
Westport, CT 06880

Chicago Trust Admin. Servcies LLC
FBO Maureen Argon 401-K
40 E Chicago Avenue#148
Chicago, IL 60611

Daniel A Bornstein& Linda Bornstein
Trustee of the Daneil & Linda
Bornstein Living Trust DTD 2.9.1996
5913 Featherlight Place
Santa Rosa, CA 95409

David L Gilbert & Deborah L Gilbert
25021 Adelanto
Laguna Niguel, CA 92677

John A & Sheila D. Valenzuela
Trustees of the Valenzuela Family
Trust DTD 9/12/96
9 Cort Rivera
San Clemente, CA 92673

Leslie R Olson, Trustee of the
Olson Family Trust DTD 1/3/2002
29 Hancock
Laguna Niguel, CA 92677

Reed C. Ferrick DMD Pension and

Profit Sharing Plan 401-K
4762 Devonshire Place
Santa Rosa, CA 95403

Richard & Leslie Breiman, Trustees
of the Breiman Living Trust
225 Valley Oaks Drive
Alamo, CA 94507

Robert W. Clippinger
Living Trust UTD 2/24/16
4910 W. 1st Street
Los Angeles, CA 90004

Ronald M. Tarbell
3 Compass
Newport Coast, CA 92657

## *CREDITORS/PARTIES FOR NOTICE:*

Sacramento County Tax Collector
PO Box 508
Sacramento, CA 95812-0508

Sacramento County
PO Box 839
Sacramento, CA 95812-0839

Franchise Tax Board
Bankruptcy Section MS: A-340
PO Box 2952
Sacramento, CA 95812

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101

Employment Development Dept.
Bankruptcy Group MIC 92E
Po Box 826880
Sacramento, CA 94280

California Department of Tax and Fee
Administration
Account Information Group MIC:29
P.O. Box 942879
Sacramento, CA 94279

U. S. Securities and Exchange
Commission
Attn: Bankruptcy Counsel
444 South Flower Street, Suite 900
Los Angeles, CA 90071-9591

Attorney General
United States Department of Justice
Ben Franklin Station
P. O. Box 683
Washington, DC 20044

Civil Process Clerk
United States Attorney's Office

Federal Building, Room 7516
300 North Los Angeles Street
Los Angeles, CA 90012

600 12th Street
4910 W 1st Street
Los Angeles, CA 90004

A Better Plumbing Co., Inc.
PO Box 161267
Sacramento, CA 95816

ABM Parking
1100 J Street
Sacramento, CA 95814

Air Systems Service & Construction
10381 Old Placerville Road, #100
Sacramento, CA 95827

Alltech Gates & Entry Controls, Inc
5325 Elkhorn Blvd., Ste. 314
Sacramento, CA 95842

Alvarado Smith
1 MacArthur Place
Santa Ana, CA 92707

AT&T
PO Box 5025
Carol Stream, IL 60197-5025

Bank of Commerce
Merchants Bank of Commerce
P.O. Box 994748
Redding, CA 96099-4748

California Association of Local
Agency Formation Commission
Pamela Miller
1020 12th Street, Ste. 222
Sacramento, CA 95814

Carter, Doug
130 Ascot Avenue
Rio Linda, CA 95673

City of Sacramento
Dept of Utilities
PO Box 2770
Sacramento, CA 95812-2770

Clippinger Investment Properties Inc
4910 W. 1st Street
Los Angeles, CA 90004

Comcast Business
9602 S 300 W
Sandy, UT 84070-3340

Comcast Cable
9602 S 300 W
Sandy, UT 84070-3340

Danielson Kim Law Group P.C.
5170 Golden Foothill Pkwy.
El Dorado Hills, CA 95762

Deodoro Ortiz
Ortiz Cleaners
123 Bell Avenue
Sacramento, CA 95838

Derrik A. Elder
1404 Katelyn Court
Yukon, OK 73099

DLA Piper LLP
2000 Avenue of the Stars, Ste. 400
Los Angeles, CA 90067

Dry Creek Construction
425 Pine Street, Ste 1-F
Galt, CA 95632

Eagle Carpet Care

1354 Keswick Lane
Lincoln, CA 95648

Easy Clean Carpet Care
PO Box 22981
Sacramento, CA 95822

Elevator Technology, Inc
2050 Arroyo Vista Way
El Dorado Hills, CA 95762

Elliott, Lane
1017 L Street
Sacramento, CA 95814

Farmers Insurance Exchange
PO Box 2847
Flint, MI 48501-2847

Fast Signs
1720 Fulton Avenue
Sacramento, CA 95825

Financial Credit Network
PO BOX 3064
Visalia, CA 93278

G. Rossi Florist
1208 J Street
Sacramento, CA 95814

Global Gate Controls Inc
3531 S. Logan Street, Ste. D403
Englewood, CO 80113

HD Supply Facilities MaintenanceLTD
PO Box 509058
San Diego, CA 92150-9058

Highlander Termite & Pest Control
3971 Duroch Road, Ste. C
Shingle Springs, CA 95682

Industrial Door Company
10235 Systems Parkway, Ste. B
Sacramento, CA 95827

James Brother Cleaning
P.O. Box 69
Elk Grove, CA 95759

Maintenance Supply Headquarters, LP
PO Box 509058
San Diego, CA 92150-9058

Megan Mobile Notary
8943 Bertwin Way
Elk Grove, CA 95758

Melanie Hogue
7541 Southwest 1st Street
Fort Lauderdale, FL 33317

Morgan, Ray
3131 Esplanade
Chico, CA 95973

National Fire Systems, Inc.
8521 Morrison Creek Drive
Sacramento, CA 95828

Nikias Law, PC
12026 Rhode Island Ave., PH2
Los Angeles, CA 90025

Overhead Door Co. of Sacramento Inc
PO Box 231608
Sacramento, CA 95823

Pacific Properties Group
12100 Wilshire Blvd., Ste. 1050
Los Angeles, CA 90025

Placer Floors, Inc.
7333 Roseville Road, Ste. 1
Sacramento, CA 95842

Preferred Services Building
Maintenance, Inc.
PO Box 221608
Sacramento, CA 95822

Rex Moore
6001 Outfall Circle
Sacramento, CA 95828

Rico's Heating & Air
1731 Howe Ave #578
Sacramento, CA 95825

Ricoh USA, Inc.
Wells Fargo Vendor, Financial Serv.
PO Box 650073
Dallas, TX 75265-0073

River City Equipment Co., Inc.
2419 Sellers Way
West Sacramento, CA 95691

RMI Systems
6001 Outfall Circle
Sacramento, CA 95828

Schindler Elevator Corp.
1329 N Market Blvd., Ste. 120
Sacramento, CA 95834-2941

Sida's Cleaning Services, LLC
3055 Great Falls Way
Sacramento, CA 95826

Simas Floor Company, Inc.
3550 Power Inn Road
Sacramento, CA 95826

SMUD
PO Box 15830
Sacramento, CA 95852-0830

TJ Elevator Service
PO Box 246270
Sacramento, CA 95820

Turton Commercial Real Estate
1525 Ridge Creek Way
Roseville, CA 95661

Tyana D. Lewis
781 Elder Drive
West Sacramento, CA 95605

U.S. Bank Equipment Finance
PO Box 790448
Saint Louis, MO 63179-0448

Valet Living
100 S. Ashley Drive, Ste. 700
Tampa, FL 33602

VZ Plumbing
3637 Kodiak Way
Antelope, CA 95843

Waste Management
PO Box 541065
Los Angeles, CA 90054-1065

Benjamin Rothchild
700 Blomfiedl Ave. #549
Bloomfield, CT 06002-4244

EllaJack, Inc.
c/o Charles L. Hastings, Esq.
Natali A. Ron, Esq.
HASTINGS & RON
PMB#270 4719 Quail Lakes Drive.,Suite
G, Stockton, CA 95207

EllaJack, Inc.
Josh Nelson
2225 Hurley Way, Ste. 101
Sacramento, CA 95825